EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| San Antonio Maritime, Transcaribbean Maritime (Sr. Víctor González)   Demandante–Peticionario    v.    Puerto Rican Cement Co., Inc.   Demandada–Recurrida | Certiorari    2001 TSPR 16 |
|---|---|

Número del Caso: CC–1999–854

Fecha: 16/febrero/2001

Tribunal de Circuito de Apelaciones:

Circuito Regional I

Juez Ponente:

Hon. Dolores Rodríguez de Oronoz

Abogada de la Parte Peticionaria:

Lcda. Maricarmen Ramos de Szendrey

Abogados de la Parte Recurrida:

Lcdo. Juan A. Marqués Díaz
Lcdo. Samuel T. Céspedes
Lcdo. Carlos Fernández Lugo

Junta de Calidad Ambiental:

Lcdo. David R. Bernier Velázquez
Lcdo. Angel Rosario Santos
Lcdo. Norman Velázquez Torres

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San Antonio Maritime,
Transcaribbean Maritime
(Sr. Víctor González)

     Demandante-peticionario

        vs.                    CC-1999-854       CERTIORARI

Puerto Rican Cement Co., Inc.

     Demandada-recurrida

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 16 de febrero de 2001

El 28 de febrero de 1997 la Junta de Calidad Ambiental (JCA) le expidió a los aquí peticionarios San Antonio Maritime, Transcaribbean Maritime y Antilles Cement un permiso temporero para la operación de una fuente de emisión, condicionado dicho permiso a que los recurrentes continuaran y culminaran los trámites administrativos que simultáneamente se realizaban en la Administración de Reglamentos y Permisos (ARPE), relativos los mismos a la autorización para la construcción y uso de un silo para el despacho de cemento.

Posteriormente, el 18 de marzo siguiente, la Puerto Rican Cement Company (PRCC)

CC-1999-854

presentó ante la JCA una solicitud de intervención, reconsideración y revocación de ese permiso. En aras de justificar su solicitud de intervención, conforme lo dispuesto en la Sección 3.5 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2155 et seq., y a la Regla 11 de las Reglas de Procedimiento de Vistas Administrativas de la Junta de Calidad Ambiental de Puerto Rico, Reglamento del Departamento de Estado Núm. 3672 del 19 de octubre de 1980, PRCC alegó que: (1) es un participante en la industria de elaboración, distribución y venta de cemento en el mercado de Puerto Rico y que, por lo tanto, tiene intereses que pueden ser adversamente afectados con la eficacia del permiso temporero en controversia; (2) al momento de solicitar intervención, no existían otros medios para proteger adecuadamente su interés, pues debería agotar los remedios administrativos antes de acudir a los tribunales; (3) su intervención era esencial para representar adecuadamente sus intereses en el procedimiento; (4) su participación podía ayudar razonablemente a preparar un expediente más completo del procedimiento; (5) su participación no dilataría el procedimiento, pues la misma era oportuna, además del hecho de que no se había celebrado vista alguna en el caso; (6) PRCC actuaría como portavoz de aquéllas entidades y personas interesadas en el fiel cumplimiento de las leyes y reglamentos aplicables en protección del ambiente, el ordenamiento y la planificación urbana e industrial; y (7) su intervención aportaría información, pericia, conocimiento especializado y asesoramiento técnico que asistiría a la JCA en la adjudicación del caso.

A raíz de dicha solicitud, la JCA expidió una orden mediante la cual le requirió a los aquí recurrentes que mostraran causa por la cual el permiso temporero no debía ser revocado. Con ese fin se señaló una vista. En dicha vista, el oficial examinador que presidió la misma, luego de escuchar los argumentos de la PRCC, del representante del interés público de la JCA, y de San Antonio Maritime, denegó la solicitud de intervención de PRCC.

La denegación de la solicitud de intervención se fundamentó en que los intereses de PRCC son "meramente económico[s]" y permitirle intervenir en los procesos ante la JCA la "convertiría [a la JCA] en árbitro de dos

entidades privadas, en disputa por aspectos económicos; aspectos ajenos a las facultades que la ley otorga a la JCA."; concluyó además, el oficial examinador, que los intereses ambientales se encontraban bien protegidos en el proceso administrativo. Por otro lado, se señaló que permitirle intervención a la PRCC "resultaría en dilaciones e inconvenientes para el proceso."

De inmediato, se comenzaron los procedimientos ante el mencionado oficial examinador sobre los méritos de la controversia objeto del señalamiento, los cuales no concluyeron esa tarde, siendo señalados para continuar tres días después.

De forma simultánea a los procedimientos en la JCA, el aquí recurrente San Antonio Maritime gestionaba la obtención de las autorizaciones requeridas de parte de ARPE. Esta agencia, el 18 de marzo de 1997, le envió a la JCA una determinación de Impacto Ambiental No Significativo (DIA-N) como parte del procesamiento del anteproyecto de los comparecientes. Junto a su DIA-N, ARPE le envió a la JCA el "formulario ambiental", presentado por San Antonio Maritime, en que consta toda la información de la naturaleza de su operación, además del "Memorial Explicativo" pertinente. En dicha comunicación, ARPE expresamente concluyó que "[e]l estudio de este proyecto nos reveló que no es necesario que se prepare una Declaración de Impacto Ambiental. Por lo antes señalado, esta agencia recomienda el procesamiento normal de este proyecto." (Énfasis suplido.)

La JCA, por su parte, dirigió a ARPE un documento en que hizo seis recomendaciones para mejorar los parámetros del proyecto en controversia, y consignó su determinación de que ARPE había cumplido con el requisito de evaluar su impacto ambiental, según requerido por el Artículo 4 (c) de la Ley de Política Pública Ambiental. Emitida su carta de comentarios a la agencia proponente, la JCA recibió y tramitó las solicitudes de permisos regulares, o permanentes, de construcción y operación de fuentes de emisión requeridas por San Antonio Maritime mediante las Reglas 203 y 204 del Reglamento de Aire.

Así las cosas, para los días 18 y 23 de abril de 1997, respectivamente, los aquí peticionarios San Antonio Maritime, et als., ya tenían en su

posesión los permisos regulares de construcción y operación de fuentes de emisión número PFE-LC-65-0497-0475-I-II-C y PFE-LC-65-0497-0482-I-II-O, <u>culminando así los trámites dirigidos a la obtención de los permisos permanentes</u>.

Al comienzo de la continuación de la vista para mostrar causa por la cual no debía revocarse el permiso de operación temporero, San Antonio Maritime solicitó el archivo del procedimiento, pues entendía que la concesión del permiso permanente tornaba en académicos todos los procesos relativos al permiso temporero. Así lo recomendó el oficial examinador, aprobándolo la JCA.

<u>Inconforme, PRCC acudió el 6 de junio de 1997 ante el Tribunal de Circuito de Apelaciones mediante recurso de revisión administrativa, y moción en auxilio de jurisdicción, en solicitud de que se revocaran las decisiones de la JCA</u>: del 17 de abril, aceptando la DIA-N de ARPE; la del 18 de abril, expidiendo permiso condicionado; la del 23 de abril expidiendo permiso de operación permanente; y la del 24 de abril de 1997, aceptando las recomendaciones del oficial examinador de denegar la intervención y decretar la academicidad del caso.

Mientras se llevaban a cabo los procedimientos sobre el permiso temporero ante la JCA, el 3 de febrero de 1997, la PRCC radicó ante ARPE una "Solicitud de investigación de querella, 97-79-A-363-SPQ", denunciando la instalación, alegadamente ilegal, por parte de San Antonio Maritime, de un silo en el Muelle 12. El 10 de febrero de 1997, ARPE contestó dicha querella aduciendo falta de información para investigar el caso.

El 4 de marzo de 1997 San Antonio Maritime le informó a ARPE que instalaría el silo en controversia cerca del Muelle 12; además, solicitó la evaluación del Formulario Ambiental ARPE 15.93, para proceder a someter los planos certificados de construcción y entonces obtener el permiso de uso de dicha agencia. El 7 de marzo de 1997, PRCC presentó tres mociones ante ARPE, una en solicitud de investigación de querella y oposición a solicitud de permiso de construcción; otra en solicitud de intervención y; por último, una en solicitud de paralización de permiso de construcción y uso de obra en auxilio de su jurisdicción.

Mediante estas tres mociones, PRCC recalcó la inacción de ARPE sobre la querella original, de fecha 3 de febrero, y solicitó la intervención en los procedimientos administrativos, en virtud de la sec. 3.5 de la L.P.A.U., para sustentar sus planteamientos de que San Antonio pretendía "legalizar" *post hoc* una estructura alegadamente construida en incumplimiento de varias leyes, en particular la Ley de Política Pública Ambiental; Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 del 24 de junio de 1975, 23 L.P.R.A. sec. 71 et. seq.; Reglamento de Zonificación de Puerto Rico, Reglamento de Planificación Núm. 4 del 16 de septiembre de 1992; Ley de la Autoridad de los Puertos; y Ley de Muelles.

El 16 de abril de 1997, ARPE autorizó el anteproyecto para la instalación del silo. Esta decisión se notificó el 6 de junio de 1997. En consideración a tal resolución, el 18 de junio de 1997, la PRCC apeló ante la Junta de Apelaciones sobre Construcciones y Lotificaciones, en adelante, "JACL". En este recurso, PRCC alegó, entre otras cosas, que Administración de Reglamentos y Permisos había errado al autorizar un anteproyecto de construcción sin antes permitir la intervención solicitada, lo cual constituía, a su juicio, una violación a las garantías constitucionales del debido proceso de ley. La JACL resolvió desestimar la apelación instada por PRCC, al resolver que ésta carecía de "legitimación activa" para intervenir en el procedimiento administrativo ante ARPE, así como para instar la apelación ante la JACL.

Inconforme con esa determinación, PRCC recurrió, nuevamente, al Tribunal de Circuito de Apelaciones, alegando esta vez que había errado la JACL al determinar que PRCC carecía de "legitimación activa" para presentar el escrito de apelación.

El Tribunal de Circuito de Apelaciones decidió consolidar los recursos de revisión de los procesos de la JCA y de la JACL, concentrando su atención en la controversia común a ambos, esto es, sobre si procedía o no la intervención de PRCC en los procedimientos ante ambas agencias. Luego de los trámites de rigor correspondientes, el foro apelativo intermedio procedió a dictar sentencia revocatoria de las resoluciones recurridas,

<u>ordenando el</u> <u>reinicio de los procedimientos adjudicativos para permitir la</u> <u>intervención de PRCC en los foros administrativos</u>.

De esa sentencia San Antonio Maritime recurrió ante este Tribunal, sosteniendo que erró el Tribunal de Circuito de Apelaciones en la sentencia que emitiera, pues:

> "–No tenía jurisdicción para acoger el recurso presentado contra determinaciones de la JCA porque se presentó ya transcurrido el término jurisdiccional para revisar la denegatoria de intervención;
> –Decidió que el procedimiento ante la JCA no se tornó académico con la obtención de los permisos regulares (permanentes) para la construcción y operación de una fuente de emisión de contaminantes;
> –Resolvió que PRCC, por ser competidora de las peticionarias, tiene derecho a intervenir en los procedimientos para la obtención de permisos ambientales y de uso del equipo operacional del nuevo negocio;
> –Revocó la determinación administrativa denegatoria de intervención sin tan siquiera enunciar el estándar de revisión judicial aplicable a esas determinaciones discrecionales de las agencias y sin concluir que las decisiones que revocó fueron arbitrarias, irrazonables o en ejercicio abusivo de discreción;
> –Ejerció su jurisdicción sobre una materia en la que no la tenía y dejó sin efecto determinaciones administrativas protegidas por la presunción de corrección, dándole a un error en la determinación discrecional de denegar intervención, peso suficiente para derrotar tal presunción;
> –Ignoró y guardó silencio sobre las objeciones y solicitudes de la parte recurrente las cuales se fundamentaban en violaciones de la PRCC al reglamento del tribunal, con lo cual incurrió en violación al Debido Proceso de Ley."

Expedimos el auto. Estando en posición de resolver el recurso radicado, procedemos a así hacerlo.

I

Como antesala a la dilucidación de las controversias planteadas hemos de señalar que, contrario a lo alegado por la parte peticionaria, PRCC acudió dentro del plazo legalmente establecido que tiene una parte adversamente afectada para solicitar la revisión de una decisión administrativa ante el Tribunal de Circuito de Apelaciones.[1]

---

[1] Según el Art. 8 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2172, "[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito

CC-1999-854

Conforme anteriormente se expresara, el 15 de mayo de 1997 la JCA notificó una _segunda_ resolución mediante la cual acogió el informe del Oficial Examinador. En aquella ocasión, _por primera vez_, apercibió a PRCC del derecho a recurrir en revisión de la misma.[2] El 6 de junio de 1997, PRCC entabló el recurso de revisión de dicha determinación, en consideración de la cual el tribunal apelativo emitió la sentencia recurrida.

Es norma claramente establecida que los términos para solicitar la reconsideración o revisión de las determinaciones adjudicativas hechas por una agencia administrativa _comienzan a decursar_ desde el momento en que se _notifica_ a la parte del archivo en autos de la copia de la orden o resolución de la agencia, y se le _apercibe_ de su derecho a solicitar la reconsideración o revisión con expresión de los términos correspondientes. _Carabani_ v. _A.R.P.E._, 132 D.P.R. 938 (1975). Además, la misma Ley de Procedimiento Administrativo Uniforme dispone que si la agencia decide denegar una solicitud de intervención en un procedimiento adjudicativo notificará su

---

de Apelaciones, dentro de un término de 30 días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia [...]". Sin embargo, advertimos que PRCC no es formalmente "parte" en el procedimiento ante la JCA, pues ni siquiera se le reconoció derecho a intervenir en el mismo. Por otro lado, PRCC es, como veremos en esta opinión, persona afectada en sus derechos por el resultado de los procesos administrativos que nos ocupan, por lo que es de aplicación al caso de marras el mismo razonamiento que utilizáramos en **Asociación de Residentes** v. **Montebello Development**, 138 D.P.R.___ (1995), según el cual tenemos que concluir que si bien el término para solicitar la revisión judicial de una resolución administrativa es jurisdiccional, no podemos olvidar que aplica sólo a quienes son formalmente "partes". Y hemos visto que PRCC no lo era, conforme la definición de la Ley de Procedimiento Administrativo Uniforme y a la determinación de la Junta de Calidad Ambiental. Por tal razón, PRCC no estaba atado irremediablemente al plazo que obliga a las "partes". Sólo vendría obligado por los plazos en lo relativo a cuestionar la negativa a su petición de intervención, mas no en lo relativo a cuestionar la corrección de las demás determinaciones.

[2] El 30 de abril de 1997 la Junta de Calidad Ambiental notificó por primera vez la resolución por escrito, denegando la intervención de PRCC. Sin embargo, en la misma no informó a PRCC que tenía derecho a acudir en revisión judicial de tal resolución, ni de los términos para hacerlo.

determinación por escrito al peticionario, los fundamentos para la misma y el recurso de revisión disponible. 3 L.P.R.A. sec. 2156. En caso de que tal notificación <u>no</u> se lleve a cabo en los términos ordenados por la ley, <u>la misma carece de eficacia</u>. Esto es, no permite que tenga existencia jurídica oponible a la persona perjudicada.

En conclusión, el primer error imputado <u>no</u> fue cometido. <u>De hecho, el recurso de PRCC fue instado dentro del plazo requerido por la L.P.A.U. para una parte recurrir en revisión de una determinación administrativa</u>.


II

Los recurrentes plantean, además, que la controversia resuelta por el Tribunal de Circuito de Apelaciones con respecto a los procedimientos ante la Junta de Calidad Ambiental <u>no</u> era justiciable, pues alegadamente la misma se tornó académica al expedirse, en un proceso separado al relativo a la expedición de los permisos temporeros, un permiso permanente que prácticamente hacía innecesaria la aplicación del permiso temporero objeto de la impugnación de PRCC ante la JCA y, posteriormente, ante el Tribunal de Circuito de Apelaciones.

Con relación a dicho planteamiento, el Tribunal de Circuito de Apelaciones expuso que:

> "Un caso <u>no</u> se torna académico cuando la secuencia de eventos o el procedimiento haya sido tan acelerado o anómalo que pueda evadir la adjudicación y la eventual revisión judicial. <u>Asociación de Periodistas</u> v. <u>González</u>, 127 D.P.R. 704 (1991). En el caso ante nos, a veinticuatro (24) horas de una vista para revocar un permiso temporero se le negó la intervención al único opositor y se le concedió un permiso permanente al querellado. <u>Esta secuela de eventos fue, como poco, acelerada y anómala</u>. Al negar la intervención y emitir el permiso permanente, la Junta de Calidad Ambiental <u>circunvino</u> un procedimiento adjudicativo ya instado, <u>obvió</u> los derechos de P.R. Cement de presentar evidencia para que el caso se adjudicara imparcialmente según el expediente, L.P.A.U., supra, sec. 2151, <u>de facto negándole a P.R. Cement el derecho a revisión judicial</u>. Además, una actuación administrativa cuya corrección pueda cuestionarse no le impide a la agencia corregir posteriormente su actuación, si de hecho fue incorrecta. <u>Del Rey</u> v. <u>J.A.C.L.</u>, 107 D.P.R. 348 (1978). No cabe aquí hablar de academicidad alguna." (Énfasis suplido.)

En <u>E.L.A.</u> v. <u>Aguayo</u>, 80 D.P.R. 552 (1958), expresamos que un pleito es académico cuando la sentencia que sobre el mismo se dictare, "[...] por

alguna razón, no podrá tener efectos prácticos." Por otro lado, en <u>Comisión de la Mujer</u> v. <u>Giménez</u>, 109 D.P.R. 715 (1980), resolvimos que el concepto de lo "académico" en la litigación "recoge la situación en que, aun cumplidos todos los requisitos de justiciabilidad, los cambios fácticos o judiciales acaecidos durante el trámite judicial de una controversia, tornan en académica o ficticia su solución." Véase también <u>Angueira Navarro</u> v. <u>Junta de Libertad Bajo Palabra</u>, res. el 11 de enero de 2000, 2000 TSPR 2. Al examinar la academicidad de un caso, <u>debemos evaluar los eventos anteriores, próximos y futuros</u>, a fines de determinar si su condición de controversia viva y presente subsiste con el transcurso del tiempo. <u>Hon. Charlie Rodríguez, Ex-parte</u>, res. el 30 de junio de 1999, 99 TSPR 104.

Por otro lado, en <u>Asociación de Periodistas</u> v. <u>González Vázquez</u>, 127 D.P.R. 704 (1991), citando al Profesor Tribe, expusimos que "[u]na vez se determina que un caso es académico los tribunales, por imperativo constitucional (ausencia de 'caso o controversia') o por motivo de autolimitación judicial, deben abstenerse de considerarlo en sus méritos. <u>Sin embargo, aun ante la presencia de un caso evidentemente académico, las complejidades de la doctrina nos llevan a preguntarnos si existe alguna razón que mueva al tribunal a considerar tal caso impregnado de academicidad</u>." (Enfasis suplido.)

Bajo ese tenor, se han elaborado una serie de <u>excepciones</u> que, de estar presente alguna de ellas, permiten que se considere un caso posiblemente académico, <u>a saber</u>: "cuando se plantea una cuestión recurrente; si la situación de hechos ha sido modificada por el demandado, pero no tiene características de permanencia; o donde aspectos de la controversia se tornan académicos, pero persisten importantes consecuencias colaterales". <u>Angueira Navarro</u> v. <u>Junta de Libertad Bajo Palabra</u>, ante.[3]

_____

[3] La excepción del carácter recurrente o repetitivo del asunto planteado presenta varios factores que debemos analizar individualmente: (1) la probabilidad de la recurrencia y (2) las partes involucradas en el procedimiento. Ambos factores están estrechamente ligados entre sí.

(Continuación escolio . . .3)
A esos efectos, en <u>Asociación de Periodistas</u> v. <u>González Vázquez</u>, ante, expusimos, en cuanto a la probabilidad de la

CC-1999-854

El caso que nos ocupa es uno cuyo desarrollo procesal fue muy complejo y fragmentado. Mientras PRCC participaba en la impugnación de la concesión de permisos temporeros ante la JCA, en otro proceso independiente, sin la participación de PRCC, la JCA concedió permisos permanentes sobre la misma materia. La finalidad del proceso de impugnación de los permisos temporeros era su revocación, es decir tornarlos ineficaces. Igual propósito persigue la PRCC a través de su reclamo con relación a los permisos permanentes. Debido a ello, concluimos que, independientemente de la academicidad de la acción de impugnación de la validez de los permisos temporeros, en el caso ante nuestra consideración existe una controversia viva y real, cuando menos, en cuanto a la validez de los permisos permanentes.

Además, en consideración a la rapidez y complicación con que, evidentemente, pueden sucederse los acontecimientos en los procesos administrativos --como, efectivamente, ha ocurrido en el caso que nos ocupa-- y al hecho de que tal realidad sería causa para evadir la revisión judicial de la decisión administrativa, procede resolver en los méritos la controversia central que plantea el presente recurso[4]; esto es, si resulta jurídicamente correcto denegarle el derecho a intervenir a una persona, o corporación, en un procedimiento administrativo en el cual está envuelta la concesión de unos permisos por el mero hecho de que esa persona, o

recurrencia, que es el factor primario en el proceso de concluir si una determinación afirmativa de academicidad promoverá la finalidad de la economía o autolimitación judicial. En aquellos casos donde exista la probabilidad de que la controversia se repita o recurra, los tribunales deben considerar el asunto planteado a pesar de que el mismo haya advenido académico. En lo referente a las partes en litigio, en el caso de Com. de la Mujer v. Srio. de Justicia, ante, señalamos que para que aplique la excepción del carácter recurrente, no es necesario que al repetirse la controversia ésta afecte a las mismas partes.

[4] Mucho más si observamos que la controversia es susceptible de repetirse entre las mismas partes que comparecen ante nos en el caso de marras, como de hecho así ya ha sucedido. Según surge del expediente, mediante escrito de fecha 8 de junio de 2000, la recurrida PRCC le informó a este Tribunal que una de las partes peticionarias, Antilles Cement Corp., pretendía dejar de utilizar el muelle sobre el cual versan los permisos a los que se refiere el caso de epígrafe y trasladar sus operaciones, o

CC-1999-854

corporación, es un competidor del peticionario de los permisos en controversia.

En fin, no estamos ante una controversia cuya resolución deba ser rechazada por académica. No erró, en consecuencia, el Tribunal de Circuito de Apelaciones al considerar el recurso presentado ante su consideración.

III

En su tercer señalamiento de error, la parte recurrente alega que PRCC no tenía derecho a intervenir en el proceso adjudicativo de la orden de mostrar causa por la cual no debía revocarse el permiso temporero, ni en el proceso de impugnación de la concesión de los permisos permanentes, y que, por lo tanto, erró el Tribunal de Circuito de Apelaciones al extenderle tal derecho. En defensa de su interés, inicialmente, San Antonio Maritime argumenta que el proceso de impugnación en cuestión no es un proceso adjudicativo[5], sino de otorgación de permisos. Expone que la L.P.A.U. sólo concede el derecho de intervención en los casos adjudicativos. De hecho, la ley se ocupa del tema de la intervención solamente en su parte relativa a la regulación de los procesos adjudicativos-administrativos.

La L.P.A.U. regula de forma particular el procedimiento para la concesión de licencias, franquicias, permisos, endosos y gestiones similares. Véanse 3 L.P.R.A. secs. 2181-84. El propósito primordial de este proceso, es asegurar al público que sólo personas calificadas y capacitadas realizarán ciertas actividades reguladas por una agencia en particular. Para ello, la agencia administrativa facultada para otorgar las licencias o permisos aprobará la reglamentación necesaria especificando las calificaciones requeridas para la obtención de dichas licencias o permisos. Demetrio Fernández, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 1993, sec. 1.4, pág. 56.

---

a otro lugar con un equipo distinto al que generó la controversia hoy ante nuestra consideración.

[5] Según la L.P.A.U., "adjudicación" significa el pronunciamiento mediante el cual una agencia determina los derechos, obligaciones o privilegios que correspondan a una parte. 3 L.P.R.A. sec. 2102.

De conformidad con la Sección 5.4 de la L.P.A.U., 3 L.P.R.A. sec. 2184, "[t]oda persona a la que una agencia deniegue la concesión de una licencia, franquicia, permiso, endoso, autorización o gestión similar tendrá derecho a impugnar la determinación de la agencia por medio de un procedimiento adjudicativo, <u>según se establezca en la ley especial de que se trate y las secs. 2151 a 2168 de este título.</u>" (Énfasis nuestro.) <u>Esto es, en caso de inconformidad con la determinación administrativa en cuanto a la concesión de la licencia o permiso, la L.P.A.U. nos remite al procedimiento adjudicativo</u>. De ello resulta que el proceso adjudicativo <u>no</u> es uno ajeno al de concesión de licencias, franquicias, permisos, endosos y gestiones similares, <u>sino uno estrechamente relacionado</u>.

Ante tal esquema, y siendo el interés del proceso de concesión de licencias y permisos uno establecido con el fin de proteger al público, <u>procede que reconozcamos el derecho a intervención en dicho proceso</u>. Además, es indiscutible el hecho de que el requerimiento de una demostración de causa por la cual no debían revocarse los permisos, luego de haberse otorgado los mismos, con la posibilidad intimada de decretar la revocación de dichos permisos, <u>realmente es una iniciativa que da lugar a un proceso adjudicativo</u>, ya sea teniendo como parte actora o promovente a la agencia o a PRCC. Es un proceso en el cual ha de adjudicarse si San Antonio tiene o no derecho a retener la eficacia de los permisos concedidos por la Junta de Calidad Ambiental para la construcción y operación de una fuente de emisión. <u>Claramente estamos ante un proceso adjudicativo</u>. Procede, por lo tanto, <u>aplicar a dicho proceso las reglas relativas a la solicitud de intervención contenidas en la L.P.A.U. y en los reglamentos administrativos sobre procesos adjudicativos de las agencias concernidas en el asunto</u>.

La Ley de Procedimiento Administrativo Uniforme define el concepto "interventor" de la siguiente forma:

> "'interventor'" significa aquélla persona que no sea parte original en cualquier procedimiento adjudicativo que la agencia lleve a cabo y que haya demostrado su capacidad o interés en el procedimiento."

Debe señalarse que el interventor ha sido, en la Ley de Procedimiento Administrativo Uniforme, <u>elevado a la calidad de parte una vez se le</u>

<u>reconozca como tal interventor</u>.[6] De ahí que, por ejemplo, cuando en la sec. 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172, se dispone que "[u]na <u>parte adversamente afectada</u> por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones [...]" (énfasis suplido), se le reconoce el derecho a los interventores a solicitar la revisión judicial de la decisión administrativa en igualdad de condiciones a las partes estrictamente formales.

Por su parte, la Sección 3.5 de la L.P.A.U., 3 L.P.R.A. sec. 2155, dispone que:

> "Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración entre otros los siguientes factores:
>
> (a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.
> (b) Que no existan otros medios en derecho para que el peticionado pueda proteger adecuadamente su interés.
> (c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.
> (d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.
> (e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.
> (f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.
> (g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.
>
> La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención."

---

[6] Dicha Ley define el concepto "parte" como que:

> "[...]significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden o que sea designada como parte en dicho procedimiento."

El profesor Demetrio Fernández señala, <u>como una de las diferencias</u> <u>entre nuestra legislación de procedimiento administrativo uniforme y la</u> <u>federal sobre la misma materia</u>, el hecho de que la legislación federal guarda silencio sobre el derecho de intervención en los procesos administrativos, mientras la nuestra se ocupa del mismo expresamente. [7] <u>De hecho,</u> <u>específicamente se acentúa que nuestra ley le concede a cualquiera que tenga</u> <u>un interés legítimo en el procedimiento adjudicativo el derecho a</u> <u>intervenir</u>.

El profesor Fernández, siguiendo el tenor de la jurisprudencia federal, señala que:

> "la frase [interés legítimo] no significa que se posea una acción legitimada. El criterio central de la determinación de si se posee legitimación es si la persona disfruta de un interés adversario en el procedimiento. Ese no puede ser el criterio porque la agencia tiene un ámbito de discreción amplio por lo flexibles que son sus procedimientos y porque si le exigiéramos tal interés estaríamos llevando a cabo una incursión en el terreno de lo que define a una parte. Específicamente se estaría tratando al interventor como parte. Una parte puede carecer de legitimación activa para participar en la revisión judicial, pero puede ser considerada como "agraviada" e interesada en participar e intervenir en el proceso administrativo. La diferencia reside en la laxitud del procedimiento administrativo *vis-a-vis* el judicial."[8]

Queda claro, entonces, que <u>no</u> procede confundir los conceptos de "interés legítimo" y "legitimación activa" en el campo administrativo. <u>Ambos</u> <u>son conceptos distintos que exigen para su verificación criterios distintos</u>. Por otro lado, el contenido de la frase "interés legítimo" contempla un gran abanico de posibilidades; el mismo puede incluir o abarcar intereses tales como, ambientales, sociales, y económicos.

Sobre la procedencia de la intervención cobijada con alegaciones de índole económica, Schwartz[9] ha dicho que:

> "[w]hat is true of electrical interference is also true of economic injury. The operator of a radio station has a right to be heard before the FCC grants a license to operate another station in the community, even though there is no possibility of electrical interference. The existing licensee suffers

---

[7] Demetrio Fernández, <u>Derecho Administrativo y Ley de</u> <u>Procedimiento Administrativo Uniforme</u>, 1993, sec. 4.2.

[8] Ante.

[9] Bernard Schwartz, Adminitrative Law, 3ra edición, sec. 6.1.

> direct economic injury in its competition with the new station for advertising revenue. Nor, under Philco Corp. v. FCC, need the adverse economic effect be suffered by a broadcast competitor. Philco was not a broadcaster, but a manufacturer of radio and electronic equipment. In this business it competed with Radio Corporation of America, the sole stockholder of National Broadcasting Co., which operated broadcast stations. Philco was held to have a right to be heard before the FCC granted renewal of two NBC station licenses, where the stations were operated to give RCA competitive advertising advantages. The notion of "party in interest," said the court, should be construed to permit those seriously affected to participate in the administrative proceeding. The competitor is adversely affected by and is a party in interest in agency orders affecting the matters to which the competition relates."[10] (Notas al calce omitidas.)

Partiendo del reconocimiento de la amplitud de contenidos del concepto que nos ocupa, el Tribunal de Circuito de Apelaciones expresó no albergar dudas:

> "[...] de que P.R. Cement tiene un "interés legítimo" y suficiente para intervenir en el procedimiento agencial. Como participante en la industria de elaboración, distribución y venta de cemento en Puerto Rico, P.R. Cement tiene un derecho de intervenir cuando objeta un permiso temporero o permanente de un competidor por alegada violación a los requisitos reglamentarios del ordenamiento en cuestión, sean éstos ambientales, de zonificación, o de cualquier otra índole."

El foro apelativo intermedio consideró que la intervención de PRCC ante los foros administrativos podía aportar información que redundaría en una correcta adjudicación, además de que dicha participación no amenaza la razonable celeridad del proceso. Debe señalarse que tales observaciones son refrendadas por el mandato legislativo, administrativo y doctrinal de adjudicar una petición de intervención de forma liberal.

Los peticionarios, sin embargo, insisten en que un interés económico en atención a la realidad competitiva del mercado de consumo de cemento, no es un interés suficiente que justifique la concesión de una petición de intervención en este caso; sostienen además que cualquier reclamo sobre materia ambiental presumiblemente  ha de quedar bien atendido con la exclusiva presencia en el proceso del representante del interés público en la JCA.

No tienen razón los peticionarios. Realmente, la PRCC cumplió, en términos generales, con los criterios que la L.P.A.U. y la reglamentación

---

[10] Ante, sec. 6.1.

CC-1999-854

aplicable exigen se deben tener en cuenta para dilucidar peticiones de intervención.[11] El interés económico de un competidor preocupado por una justa y legal competencia en el mercado es, sin duda, un interés que no queda descartado por el concepto de "interés legítimo" que sirve de antesala a cualquier solicitante de intervención en los procesos adjudicativos de una agencia administrativa. Cabe preguntarse si, de ordinario, existe alguien con mayor interés y mejores recursos que un competidor para señalar las irregularidades productoras de daño ambiental provocadas por otro participante del mismo mercado.[12]

Es de conocimiento general que la JCA tiene como objetivo y finalidad principal la protección de la calidad ambiental de Puerto Rico y sus recursos deben ir siempre dirigidos al logro de esa meta. En el caso que nos ocupa la intervención de PRCC en dicho procedimiento, y la aportación que ésta puede hacer en el mismo, es un recurso que puede servir de gran ayuda a la J.C.A. a resolver conforme los mejores intereses del pueblo de Pueblo Rico en materia de calidad ambiental.

Aplicando tales guías a la solicitud de intervención de PRCC, concluimos que:

---

[11] En el manual de Reglas de Procedimiento de Vistas Administrativas de la Junta de Calidad Ambiental de Puerto Rico se dispone que:

> "El interventor advendrá una parte igual a las demás si se le concede la solicitud para intervenir. Esta petición será declarada con lugar sólo si el promovente demuestra que,
> (1) la intervención no habrá de causar dilación indebida o perjuicio a los derechos de las partes originales;
> (2) el interventor ha consentido estar obligado por los acuerdos escritos, estipulaciones, y todas las órdenes introducidas en el procedimiento con anterioridad a la intervención, y
> (3) el promovente sería afectado adversamente por una resolución final."

[12] Esta conclusión fue avalada, en términos generales, por este Tribunal en Colegio de Peritos Electricistas v. A.E.E., Opinión y Sentencia de 22 de febrero de 2000.

CC-1999-854

-PRCC está obligado a agotar los remedios administrativos en protección de sus intereses, por lo que su intervención es realmente un paso necesario para la tramitación definitiva de su reclamo;

-el interés de competidor económico de PRCC no quedaría representado, ni igualado, adecuadamente por parte alguna en el procedimiento administrativo si no se le permitiera intervenir;

-la participación de PRCC podría ayudar a preparar un expediente más completo del procedimiento;

-nada indica que en definitiva la participación de PRCC pueda extender o dilatar excesivamente el procedimiento;

-PRCC, además de ser un competidor económico en el mercado de venta de cemento en Puerto Rico, expone su preocupación legítima por que se cumplan las normas de protección ambiental en su industria;

-PRCC, indudablemente, podría aportar información, pericia, conocimientos especializados y asesoramiento técnico que, aunque presumiblemente también los posee la JCA, serían puestos en función movidos por un interés de corte adversativo que, de ordinario, es herramienta útil para un más certero análisis de los asuntos bajo estudio.

No hay duda que, de ordinario, los tribunales miramos con deferencia tanto las determinaciones fácticas de las agencias administrativas, como las interpretaciones que de la ley cuya administración le fue encomendada por la Legislatura efectúan las agencias administrativas en sus procedimientos adjudicativos. En este último caso se presume que la agencia posee un conocimiento especializado en los asuntos encomendádoles por el legislador, por lo que nuestra función revisora se limita a determinar si la interpretación o actuación administrativa fue razonable, a la luz de las pautas trazadas por el legislador. Com. Seguros P.R. v. Gen. Accident Ins. Co., 132 D.P.R. 543 (1993). Cuestiones de derecho que no involucren interpretaciones efectuadas dentro de la zona de especialización de la agencia son revisables en toda su extensión. Rivera Rentas v. A & C Development Corp, res. el 26 de nov. de 1997, 144 D.P.R.___ (1997).

Los tribunales, sin embargo, no debemos avalar aquellas situaciones en que la interpretación administrativa resulta irrazonable e inconsistente

con el propósito legislativo[13], la misma afecta derechos fundamentales o conduce a la comisión de injusticias. <u>Calderón et al</u> v. <u>Adm. De los Sistemas de Retiro</u>, 129 D.P.R. 1020 (1992). Véanse también: Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Editorial Forum, 1993, páginas 5044-550; <u>De Jesús</u> v. <u>Depto. de Servicios Sociales</u>, 123 D.P.R. 407 (1989); <u>Srio. D.A.C.O.</u> v. <u>Junta de Condómines</u>, 121 D.P.R. 807 (1988); <u>Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company</u>, res. el 2 de abril de 1998, 98 TSPR 39.[14]

Debe mantenerse presente, además, que la denegatoria a intervenir en un procedimiento administrativo es una <u>cuestión de derecho</u> que es <u>revisable</u> en toda su extensión. <u>Además, la determinación sobre el derecho a intervenir no es una cuestión dentro de la zona de especialización de la JCA. Se trata de una interpretación estatutaria que no incide en la pericia administrativa.</u>

Como ya hemos señalado, en este caso <u>no</u> podemos brindar deferencia a la interpretación hecha por la Junta de Calidad Ambiental con respecto a la petición de intervención presentada por PRCC. La interpretación o

---

[13] La intención legislativa manifestada al aprobarse la Ley de Procedimiento Administrativo Uniforme dejó constar la consciencia legislativa de que:

> "[d]urante las últimas cuatro décadas la política pública del país ha estado inspirada en el desarrollo económico , la justicia social y la eficiencia administrativa. Dicha política pública ha sido instrumentada por una administración pública que ha promovido y facilitado el desarrollo económico y social del país en pocas décadas y a niveles insospechados para un pueblo en desarrollo.
> [...]
> La medida sistematiza y crea un cuerpo uniforme de reglas mínimas que toda agencia deberá observar al formular reglas y reglamentos que definan los derechos y deberes legales de una clase particular de personas. Contiene, además, otro cuerpo de normas distintas para gobernar las determinaciones de una agencia en procesos adjudicativos al emitir una orden o resolución que define los derechos y deberes legales de personas específicas.
> [...]
> Esta ley se inspira en el propósito de brindar a la ciudadanía servicios públicos de alta calidad, eficiencia, esmero, prontitud, <u>y se aplicará e interpretará liberalmente para alcanzar dichos propósitos en el resguardo de las garantías básicas al debido procedimiento de ley.</u>" (Énfasis suplido.)

[14] Hemos resuelto que, en los casos ambientales la revisión judicial de la decisión administrativa es una más cuidadosa. <u>Municipio de San Juan</u> v. <u>Junta de Calidad Ambiental</u>, Opinión y Sentencia de 5 de octubre de 1999.

posición que ha adoptado dicha agencia, en esta ocasión, resulta ser irrazonable, arbitraria e inconsistente con los propósitos legislativos expuestos con respecto al derecho de intervención. No erró el Tribunal de Circuito de Apelaciones en este aspecto de su decisión. Procedía concederle intervención a PRCC en los procesos de impugnación de los permisos concedidos a SAM, tanto en relación con los de carácter temporero como los permanentes.

IV

Por otro lado, y en lo referente a la solicitud de intervención de PRCC ante ARPE y JACL, en apelación de la determinación de ARPE de conceder los permisos permanentes de construcción y uso solicitados por SAM, somos del criterio que, bajo el razonamiento antes expuesto, claramente se erró al no concederlas.

Debe recordarse que en Asociación de Residentes Parque Montebello, v. Montebello Development Corp., res. el 2 de mayo de 1995, 138 D.P.R.___ (1995), nos enfrentamos a un litigio en el cual una Asociación de Residentes, afectada por una resolución de ARPE, y la cual no había participado en el proceso original, le solicitó a dicha agencia que permitiera su intervención para impugnar la resolución en controversia; en la alternativa solicitó que se permitiera su participación en reconsideración. ARPE denegó tal petición. Ante el reclamo de la Asociación de Residentes resolvimos que procedía concederle lo solicitado. Citamos in extenso:

> "Procede revocar. La Ley Núm. 170 (3 LPRA sec. 2101 et seq.), aplica "a todos los procedimientos administrativos conducidos ante todas las agencias que no están expresamente exceptuados por el mismo." 3 LPRA sec. 2103, (énfasis suplido). Véase, Ortiz Serrano v. González Rivera, 92 CDT 143, res. en 27 de octubre de 1992. Como tal A.R.P.E. está incluida. 3 LPRA sec. 2102(a).
>
> A tono con ese mandato legal, en mayo de 1989 entró en vigor el Reglamento de Procedimiento Adjudicativo de A.R.P.E. extensivo "a todos los Procedimientos adjudicativos conducidos ante la Administración relacionados con: (1) Solicitudes de Permisos Para la construcción, reconstrucción, alteración, ampliación, traslado, demolición y uso de edificios o estructuras; o para el uso y desarrollo de terrenos: o para la instalación de rótulos o anuncios. ..." (Sec. 1.04) -énfasis suplido-. Dispuso además, que "[l]a parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de treinta (30) días desde la fecha de la notificación

de la resolución u orden, presentar una moción de reconsideración..." (Sec. 21.01). "Parte" es "[t]odo proponente, interventor o aquella persona a quien se dirija específicamente la acción de la Administración." Sec. 2.01(12) Reglamento Adjudicativo de A.R.P.E. Bajo la Ley Núm. 170, "'Parte' significa toda persona o agencia autorizada por ley a quien se dirija específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma, o que haya radicado una petición para la revisión o cumplimiento de una orden, o que sea designada como parte en dicho procedimiento." (3 LPRA sec. 2102).

Naturalmente, la intervención es el mecanismo procesal para que una persona, que no fue parte original en un procedimiento, pueda defenderse de la determinación administrativa. Mediante éste "cualquier persona que tenga un interés legítimo en este procedimiento adjudicativo podrá someter una petición por escrito debidamente fundamentada para que se le permita participar." Sec. 4.01., Reglamento Adjudicativo A.R.P.E.

[...]

La cuestión es crucial. Estos residentes tienen un interés legítimo en el remanente de los terrenos, y una expectativa seria sobre el uso y destino de las facilidades vecinales originales, Como tales, no podían ser ignorados. Como adquirentes y residentes en la urbanización indirectamente sufragaron esos terrenos.

[...]

Por los fundamentos expuestos, se dictará Sentencia revocatoria. Se ordenará a A.R.P.E. que permita la intervención de la Asociación de Residentes, y previa vista evidenciaria, adjudique en reconsideración sus reclamos." (Notas al calce omitidas).
Igual solución se impone en el caso de autos. En lo que respecta a la JACL, en la Regla 4(e) de su Manual de Reglas de Procedimiento Adjudicativas, se define el concepto "interventor" como "la persona o grupo de personas que no hayan sido parte original en el procedimiento administrativo y que hayan demostrado su capacidad o interés en el caso." (Énfasis suplido.)

Luego, en la Regla 4(i) se define "parte afectada" como la "persona que ve afectado su interés personal o pecuniario por la actuación, determinación o Resolución de ARPE." Más adelante, en la Regla 4 (j) define "parte interesada" como "persona natural o jurídica cuyo interés puede verse afectado por la decisión final del caso." (Énfasis suplido.)

Resulta obvio que el propio reglamento de la Junta de Apelaciones sobre Construcciones y Lotificaciones reconoce expresamente el interés pecuniario como uno justificativo para conceder intervención a una persona en un

procedimiento adjudicativo de apelación por una determinación de ARPE. Es tal la importancia que a dicho interés se le reconoce en dicho reglamento que la persona que lo posea adviene a la categoría de "parte afectada". Es evidente, por la letra clara del reglamento mismo, que la JACL erró al denegarle intervención a PRCC en el proceso apelativo instado. Mucho más errónea fue la denegatoria del derecho a la intervención utilizando para ello la perspectiva rígida del análisis aplicable al estudio de la legitimación activa. Ya hemos dicho que el concepto "intervención" es uno distinto del de "legitimación"; equipararlos conduce a errores como el aquí señalado.

No vemos razón alguna, sin embargo, para dejar sin efecto, en esta etapa de la controversia, la concesión de los permisos impugnados. No estamos, en estos momentos, en posición de adjudicar en los méritos la procedencia o no de los permisos; razón por la cual entendemos que erró el Tribunal de Circuito de Apelaciones al revocar la concesión de dichos permisos. Lo correcto habría sido permitir la intervención de PRCC en los procesos de impugnación de los permisos mediante reconsideración, tal como ordenáramos en Montebello, ante.

V

Por último, San Antonio Maritime alega que procede revocar la sentencia del Tribunal de Circuito de Apelaciones, alegando que dicho tribunal erró al no expresarse sobre las objeciones y solicitudes de esa parte con respecto a la admisión de cierta prueba documental e ilustrativa que sometiera PRCC ante ese tribunal y la cual no había sido incluida en el expediente del proceso adjudicativo administrativo. No tiene razón.

Nada indica que el ofrecimiento de dicha prueba de parte de PRCC haya sido un factor decisivo o sustancial en la sentencia cuya revocación se solicita. Mucho menos cuando lo que el Tribunal de Circuito de Apelaciones dilucidó en la sentencia recurrida fue lo referente al derecho de PRCC a intervenir en los procesos administrativos ante la JCA, ARPE y la JACL.

La prueba en controversia no se relaciona con ese particular. Dicha prueba iba dirigida a cuestionar sustantivamente la legalidad de la

CC-1999-854

actuación de la JCA que modificó el permiso de operación objeto del presente recurso y, por otro lado, a demostrar la supuesta violación, por parte de SAM, de lo ordenado por la JACL que, de hecho, le negó el derecho de intervención a PRCC ante su foro. Además, en todo momento PRCC aclaró que dichos documentos no eran parte del expediente de los procedimientos adjudicativos en controversia; es decir, no indujo a error al tribunal apelativo intermedio con su ofrecimiento.

No hay indicio alguno de que el Tribunal de Circuito de Apelaciones haya considerado la prueba en controversia. De hecho, con independencia de dicha prueba, el resultado al que llegó dicho foro judicial no habría sido distinto pues la prueba en controversia realmente no era relativa a la adjudicación de si procedía o no la intervención de PRCC en el proceso administrativo, lo cual fue el único asunto adjudicado por el Tribunal de Circuito de Apelaciones en el caso de autos.

VI

Por los fundamentos antes expuestos procede confirmar parcialmente la sentencia del Tribunal de Circuito de Apelaciones en cuanto se resuelve que PRCC tiene derecho a intervenir en los procedimientos administrativos adjudicativos de impugnación de los permisos permanentes expedidos por la JCA y ARPE en favor de la parte recurrente, San Antonio Maritime. En lo referente a la solicitud de intervención mediante apelación ante la JACL, igualmente resolvemos que procedía su concesión. Se revoca la sentencia del Tribunal de Circuito de Apelaciones en cuanto la misma dejó sin efecto los permisos impugnados por PRCC; esto es, los mismos retendrán su eficacia hasta tanto se dilucide el reclamo de esa corporación, en reconsideración, ante las agencias concernidas por esta controversia.

Se dictará Sentencia de conformidad con lo expresado.

FRANCISCO REBOLLO LOPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

San Antonio Maritime,
Transcaribbean Maritime
(Sr. Víctor González)

    Demandante-peticionario

       vs.                           CC-1999-854        CERTIORARI

Puerto Rican Cement Co., Inc.

    Demandada-recurrida

## SENTENCIA

San Juan, Puerto Rico, a 16 de febrero de 2001

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia confirmando parcialmente la sentencia del Tribunal de Circuito de Apelaciones en cuanto la misma resuelve que PRCC tiene derecho a intervenir en los procedimientos administrativos adjudicativos de impugnación de los permisos permanentes expedidos por la JCA y ARPE en favor de la parte recurrente, San Antonio Maritime.

En lo referente a la solicitud de intervención de PRCC, mediante apelación ante la JACL, igualmente resolvemos que procedía su concesión, razón por la cual procede la confirmación, a esos efectos, de la referida sentencia.

Se revoca la sentencia del Tribunal de Circuito de Apelaciones en cuanto la misma dejó sin efecto los permisos impugnados por PRCC; esto es, los mismos retendrán su eficacia hasta tanto se dilucide el reclamo de esa corporación, en reconsideración, ante las agencias concernidas por esta controversia.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señora Naveira de Rodón y señor

Fuster Berlingeri concurren en el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez no interviene.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo