*693 TEXTO COMPLETO DE LA SENTENCIA
Antonio Lozada Rivera recurre de una determinación final de la Administración de Corrección por entender que la agencia no tiene la facultad en ley para obligarlo a afeitarse, máxime cuando su religión musulmana se lo prohíbe.
Con el beneficio de la comparecencia de las partes y estudiados los autos, resolvemos CONFIRMAR la determinación recurrida. Exponemos.
I
Antonio Lozada Rivera se encuentra bajo la custodia de la Administración de Corrección en la institución Guayama 1,000.
El 16 de enero de 2009, éste presentó una solicitud de remedio administrativo señalando que desde que ingresó al sistema correccional y a la institución de Bayamón 705 se le trata de imponer que esté afeitado y recortado en todo momento. Cuestionó de dónde surge la autoridad de la Administración de Corrección para dicha imposición. Señaló que no es lo mismo la exigencia de estar acicalado a requerir que esté afeitado. Advierte que no se puede discriminar en su contra por practicar la religión musulmana, la cual no le permite afeitarse.
La Administración de Corrección emitió una respuesta indicando que Víctor Maldonado, superintendente de la Institución Bayamón 705, notificó que Lozada Rivera fue trasladado para Guayama 1,000 el 29 de enero de 2009.
De los autos no surge la solicitud en reconsideración de Lozada Rivera, pero de la respuesta en reconsideración de la agencia surge:
“El 12 de marzo de 2009, se recibe solicitud de reconsideración del recurrente, en la cual solicita revisión por no estar de acuerdo con la respuesta emitida, ya que entiende que la Administración de Corrección de la Institución de Bayamón 705 le impuso que tenía que estar debidamente afeitado y recortado en todo momento. A lo cual, él entiende es inconstitucional, ya que ninguna persona bajo la Administración de Corrección tiene la potestad de imponerle a un confinado que esté afeitado y recortado en todo momento. Además alega le negaron los servicios de área médica, sociales en varias ocasiones.” Véase, Revisión Administrativa, Respuesta de Reconsideración, pág. 2.
En su respuesta a la reconsideración, la Administración de Corrección señaló que conforme el Manual de Normas y Procedimientos -Capítulo Saneamiento e Higiene-, el cuidado del cabello de los miembros de la población correccional debe cumplir con los requerimientos de salud aplicables e incluso un supervisor puede exigirle a un miembro de la población correccional que se bañe o recorte si fuese necesario por razones de higiene. La agencia determinó que no existía discrimen en contra de Lozada Rivera porque a todo miembro de la población correccional se le exige el cumplimiento con el Manual de Mantenimiento e Higiene.
Sobre el reclamo de Lozada Rivera de que se le negaron los servicios sociales y de área médica por no estar *694 recortado o afeitado, la agencia puntualizó que eso no fue argumentado en su solicitud inicial ni se evidenció la situación con fechas y nombres de las personas involucradas. Por último, concluyó que por razón de que Lozada Rivera fue trasladado a la institución Guayama 1,000 el 29 de enero de 2009, su reclamo se tomó en académico. Dispuso de la solicitud confirmando la respuesta emitida.
Inconforme, Lozada Rivera sostiene que erró la Administración de Corrección:
“1. Al citar el Manual de Normas y Procedimientos, Capítulo Saneamiento e Higiene -XI- Higiene Personal, porque dicho reglamento no indica que éste tiene que estar afeitado “al cuero” en todo momento.
2. Al no explicar porqué se discriminó en su contra por tener la barba acicalada si en ningún reglamento lo prohíbe, además de que es parte de una religión que éste practica.”
II
A. Reglamentación administrativa aplicable
La Ley Orgánica de la Administración de Corrección faculta a la agencia a estructurar la política pública en el área de corrección. 4 L.P.R.A. see. 1112 (a). De igual forma, el Administrador de Corrección tiene la facultad de estructurar la política correccional, de acuerdo con la Ley Orgánica, y de prescribir directrices programáticas y normas para el régimen institucional; así como para aprobar, enmendar y derogar reglamentos para estructurar esa Ley Orgánica, los cuales tendrán fuerza de ley. 4 L.P.R.A. see. 1113 (g) y (1). De ahí que, amparada en la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, (en adelante LPAU), la Administración de Corrección estructura dicha política mediante reglamentos y declaraciones de aplicación general a los confinados bajo su jurisdicción.
Las autoridades carcelarias, por su conocimiento especializado sobre la materia, poseen una amplia discreción para implantar las disposiciones reglamentarias necesarias a los fines de lograr la rehabilitación de los confinados y de mantener la seguridad institucional y general. Cruz Negrón v. Adm. de Corrección, 164 D.P.R. 341 (2005). Los administradores de las instituciones penales poseen una amplia discreción en la adopción y ejecución de la política pública y las prácticas que a su juicio son necesarias para preservar el orden interno, la disciplina y mantener la seguridad institucional. Id., citando a Bell v. Wolfish, 441 U.S. 520 (1979).
En lo pertinente, el Manual sobre el Plan de Mantenimiento y Salud Ambiental de la Administración de Corrección del 22 de agosto de 2008, (en adelante Manual), tiene el propósito de establecer los procedimientos para cumplir con las normas de salud ambiental aplicables y de proveer instrucciones generales relacionadas con la higiene, limpieza y mantenimiento de las instituciones correccionales. Se entiende por higiene el conjunto de conocimientos y técnicas que deben aplicar a los individuos para el control de los factores que ejercen o pueden ejercer efectos nocivos sobre la salud; por tanto, tiene como objetivo la conservación de la salud y la prevención de enfermedades. Véase, Art. IV(5) del Manual.
En particular, se establece que el cuidado del cabello de los miembros de la población correccional en general y de los que se encuentran en áreas de segregación debe cumplir con los requerimientos de salud aplicables. Véase, Art. XI(C)(l)(a) del Manual. Los supervisores podrán obligar o exigirle a un miembro de la población correccional que se bañe o recorte si eso fuese necesario por razones de higiene. Véase, Art. XI(C)(1) (d) del Manual.
Más aún, entre las responsabilidades del Superintendente está el asegurarse de que se cumpla con el mantenimiento e higiene de la institución incluyendo el servicio de comidas, seguridad, apariencia y conducta a tono con el escenario de trabajo y las normas y reglamentos vigentes, tanto de la población correccional como del personal. Art. VIII(E)(2) del Manual de Normas y Procedimientos.
*695 B. Deferencia a las determinaciones administrativas de la Administración de Corrección
Nuestro Tribunal Supremo ha reconocido que las autoridades correccionales gozan de gran discreción y merecen la deferencia de los tribunales cuando una parte pretende revisar judicialmente sus actuaciones. Cruz Negrón v. Administración de Corrección, supra. La función revisora de este foro apelativo con respecto a las determinaciones de la Administración de Corrección, como de cualquier otra agencia, es de carácter limitado. Sus decisiones merecen nuestra mayor deferencia judicial, sobre todo cuando es la agencia quien- tiene la especialización necesaria para atender situaciones particulares sobre las cuales la ley le confiere jurisdicción. Álamo Romero v. Administración de Corrección, 2009 J.T.S. 9, 175 D.P.R._(2009).
Sabido es que el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar si existe una base racional respaldada por evidencia sustancial que sostenga la decisión o interpretación impugnada. LPAU, 3 L.P.R.A. see. 2175; Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004). A estos fines, evidencia sustancial es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Federation v. Ebel, 2008 J.T.S. 8, 172 D.P.R. _ (2007). Si la totalidad del expediente administrativo sostiene las determinaciones adoptadas por la agencia, los tribunales no deben sustituirlas por su propio criterio. Rebollo v. Yiyi Motors, supra. Ahora bien, las conclusiones de derecho de la agencia son revisables en todos sus aspectos. LPAU, 3 L.P.R.A. see. 2175.
Las determinaciones administrativas tienen a su favor una presunción de legalidad y corrección. Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200 (1995); Fac. C. Soc. Aplicadas v. C.E.S., 133 D.P.R. 521 (1993). La revisión judicial de una decisión administrativa se circunscribe a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. Pacheco v. Estancias de Yauco, 160 D.P.R. 409 (2003). En armonía con lo anterior, la función judicial incluye el evaluar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituyó un abuso de discreción. Fuertes v. A.R.P.E., 134 D.P.R. 947 (1993).
C. Doctrina federal sobre la libertad de culto en las instituciones penales
La libertad de culto está consagrada en el Artículo II, Sección 3 de la Constitución del Estado Libre Asociado de Puerto Rico y en la Primera Enmienda de la Constitución de los Estados Unidos de América.
Los confinados poseen aquellos derechos que no son fundamentalmente inconsistentes con la reclusión o incompatibles con los objetivos de la encarcelación. Hudson v. Palmer, 468 U.S. 517 (1984). Estos deben ser provistos de oportunidades razonables para ejercer su libertad religiosa según garantiza la Primera Enmienda. Id.
Ahora bien, aun cuando los confinados están protegidos por muchas de las protecciones constitucionales, no hay duda de que la encarcelación tiene como consecuencia la pérdida de derechos significativos. Bell v. Wolfish, supra. Estas restricciones sobre los confinados, y en ciertos casos la pérdida completa de algunos derechos, se justifica en consideraciones que subyacen nuestro sistema penal. Price v. Johnston, 334 U.S. 266 (1948). El cese de ciertos derechos es necesario para acomodar una miríada de necesidades institucionales y objetivos de las instituciones correccionales como, por ejemplo, el mantener la seguridad interna. Hudson v. Palmer, supra; Wolf v. McDonnell, 418 U.S. 539 (1974).
En cuanto a derechos constitucionales de los confinados en prisión, el Tribunal Supremo de Estados Unidos ha señalado:
“This Court recognized in Turner [v. Safley, 482 U.S. 78 (1987)] that imprisonment does not automatically *696 deprive a prisoner of certain important constitutional protections, including those of the First Amendment. [...] But at the same time, the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. [...] Courts owe ‘substantial deference to the professional judgment of prison administrators. [...] Restrictive prison regulations are permissible if they are reasonably related' to legitimate penological interests and are not an ‘exaggerated response’ to such objectives.
Turner also sets forth four factors ‘relevant in determining the reasonableness of the regulation at issue.’ [...] First, is there a ‘valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it’? [...] Second, are there ‘alternative means of exercising the right that remain open to prison inmates’? [...] Third, what ‘impact’ will ‘accommodation of the asserted constitutional right. . . have on guards and other inmates, and on the allocation of prison resources generally’? [...] And, fourth, are ‘ready alternatives’ for furthering the governmental interest available?” (Citas omitidas). Véase, Beard v. Banks, 548 U.S. 521 (2006).
D. Doctrina de la academicidad y sus excepciones.
La academicidad es una de las manifestaciones del concepto de justiciabilidad que enmarca los límites de la función judicial. C.E.E. v. Depto. de Estado, 134 D.P.R. 927 (1993). Un caso es académico cuando pierde su carácter adversativo bien por cambios fácticos o judiciales acaecidos durante el trámite judicial y ello crea una situación en que la sentencia sería una opinión consultiva. Angueira v. J.L.B.P., 150 D.P.R. 10 (2000). Es decir, el pleito es académico cuando la sentencia que sobre el mismo se dictare no podría tener efectos prácticos. E.L. A. v. Aguayo, 80 D.P.R. 552 (1958); Cruz Negrón v. Administración, supra.
Al examinar la academicidad de un caso se debe evaluar los eventos anteriores, próximos y futuros, a fines de determinar si su condición de controversia viva y presente subsiste con el transcurso del tiempo. San Antonio Maritime v. P.R. Cement Co., 153 D.P.R. 374 (2001). Una vez se determina que un caso es académico, los tribunales tienen el deber de abstenerse y no pueden entrar a considerar sus méritos. El Vocero v. Junta de Planificación, 121 D.P.R. 115 (1988). Un recurso académico debe ser desestimado conforme la Regla 83 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B.
Existen varias excepciones a la doctrina de academicidad, a saber: (1) casos en los que aun cuando la decisión del tribunal no afecta a las partes involucradas, presentan una cuestión recurrente; (2) casos cuya situación de hechos ha sido modificada voluntariamente por el demandado, pero sin visos de permanencia; (3) pleitos de clase en los cuales la controversia se toma académica para un miembro de la clase, mas no para el representante de la misma; y (4) casos que aparentan ser académicos, pero en realidad no lo son por sus consecuencias colaterales. Asoc. de Periodistas v. González, 127 D.P.R. 704 (1991); RBR Construction, S.E. v. A.C., 149 D.P.R. 836(1999).
ni
En síntesis, nos corresponde resolver si la Administración de Corrección tiene facultad en ley para requerirle al recurrente que se afeite la barba a pesar de que éste pertenece a la religión musulmana y sus creencias se lo impiden.
La Administración de Corrección está obligada a cumplir con las disposiciones de sus propios reglamentos, lo cual incluye el Manual Sobre el Plan de Mantenimiento y Salud Ambiental, supra. Conforme ese manual es responsabilidad de la agencia velar por la higiene y la apariencia de los miembros de la población correccional que están bajo su jurisdicción. Esto incluye el que éstos estén afeitados. El deber de la agencia de velar por la higiene y apariencia de los confinados tiene su génesis en consideraciones de salud, de seguridad y de orden institucional.
*697 El análisis de la actuación administrativa está enmarcado en un principio de deferencia que nos impone nuestro ordenamiento jurídico. A su vez, no hay controversia en que la Administración de Corrección tiene el deber de proveer una oportunidad razonable al recurrente para que ejerza su derecho constitucional a la libertad religiosa. Hudson v. Palmer, supra. Al evaluar una actuación de la agencia que interfiera con derechos constitucionales consagrados en la Constitución federal, nos corresponde resolver si la regulación está razonablemente relacionada a un interés penológico legítimo y no se trata de una respuesta exagerada en cuanto a esos objetivos. Beard v. Banks, supra. Al determinar la razonabilidad de la regulación se debe considerar: (1). si existe una conexión válida y racional entre la regulación y el interés legítimo gubernamental que justifica; (2) si hay otros medios disponibles para que el confinado pueda ejercer su derecho; (3) qué impacto tendría el acomodo del derecho constitucional en los guardias, otros confinados y en la asignación de los recursos de la prisión en general; y (4) si hay disponibles alternativas preparadas para adelantar el interés gubernamental. Id.
Conforme los criterios que guían nuestro análisis, la exigencia de la Administración de Corrección de que todos los confinados estén afeitados está razonablemente relacionada al fin legítimo de mantener la higiene y la apariencia de éstos en unas condiciones que fomenten la salubridad y seguridad en la institución penal. No se trata de actuación exagerada de la agencia y su aplicación es uniforme a todos los confinados de la población correccional. No es un requerimiento discriminatorio, sino de aplicación general. La regulación tiene una conexión válida y racional con los intereses legítimos que la inspiran. Además, el confinado no está impedido de ejercer su religión musulmana, sino que está compelido a mantener un nivel de higiene adecuado.
Así pues, resulta razonable que la Administración de Corrección imponga unas normas uniformes y aplicables a toda la población correccional en cuanto a su higiene y apariencia física en protección a la consecución de intereses penales válidos. Dejar al arbitrio de los confinados el mantener su higiene y apariencia física como les plazca, según solicita el recurrente, constituye una obstrucción a las facultades de la Administración de Corrección de estructurar la política pública de las instituciones correccionales y se traduce en un riesgo al orden interno, la disciplina de los confinados y la seguridad institucional.
Por otra parte, a pesar de que se han esbozados razones para aplicar la doctrina de academicidad -el cambio del recurrente de institución correccional y el alegado cumplimiento de éste según informado por el Procurador General-, lo cierto es que se trata de un asunto susceptible a ser recurrente entre las mismas partes por lo cual está exento a la aplicación de la referida doctrina. Por esa razón atendimos el recurso en sus méritos.
Por último, luego de presentado el alegato de la Administración de Corrección, el recurrente presentó una oposición aduciendo, por primera vez, que padece de una condición dermatológica en la cara, que la misma consta en su expediente médico ante la agencia y que por ello le han concedido permisos para no afeitarse en ciertos momentos. Acompañó su escrito con certificación médica.
Aunque no podemos resolver los méritos de su argumento, puesto que fue presentado por primera vez en esta etapa apelativa, nos sentimos obligados a advertirle a la Administración de Corrección que si del récord médico del recurrente surge que padece de una condición dermatológica que le impide afeitarse, eso constituye causa suficiente para que se le exima de ello cuando esté justificado por razones de su salud.
Por otra parte, en esa última comparecencia, el recurrente alega, por primera vez, que no les proveen navajas a las personas indigentes y, también, que se les niegan servicios de escuela, recreación y área médica por no estar afeitados. Señala que se propagan las enfermedades de VIH y Hepatitis C porque a los indigentes no se les proveen navajas ni desinfectante para limpiar la máquina de recortar.
Estas alegaciones no fueron parte de la solicitud inicial de remedio administrativo que corresponde al caso ante nos. Por tal razón estamos impedidos de resolver los méritos de las mismas. El recurrente hace unas alegaciones muy serias que debe dilucidar en el proceso administrativo correspondiente -por ejemplo, mediante *698 una solicitud de remedio administrativo a esos efectos-, y de estar inconforme con la determinación administrativa final podría recurrir ante nos.
En resumen, atendiendo sólo las alegaciones contenidas en la solicitud inicial de remedio administrativo, procede confirmar la actuación administrativa.
IV
Por los fundamentos expuestos, se CONFIRMA la determinación de la Administración de Corrección.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Lie. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones