Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL ESPECIAL

| | | |
|---|---|---|
| COMISIÓN DE JUEGOS DEL GOBIERNO DE PUERTO RICO<br><br>Recurrido<br><br>V.<br><br>CAMARERO RACE TRACK; SEÑOR LUCAS CASTRO BADÍA; SEÑOR OMAR CARRIÓN, AGENTE HÍPICO #546<br><br>**OMAR CARRIÓN TORRES**<br><br>**Recurrente** | KLRA202300523 | *Revisión de Decisión Administrativa* procedente de la Comisión de Juegos del Gobierno de Puerto Rico<br><br>Caso Núm.: NH-21-46<br><br>Sobre: INVESTIGACIÓN bajo la Ley Núm. 199 del 8 de diciembre de 2014, la cual enmienda los Artículos 3, 4, 6 y 9, 12, 14, 15, 16, 19, 20, 26, 27, 28 y 30 de la Ley Núm. 83 del 2 de julio de 1987: "Artículo 12 (a) (13) – Facultades del Administrador Hípico; Licencias de Agentes Hípicos, Reglamento 8944 del 6 de abril del 2017, Cap. 9, Art. XXII, 2201 (a) (b) (c) (d) |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Martínez Cordero y el Juez Rivera Colón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 29 de enero de 2024.

El 6 de octubre de 2023, compareció ante este Tribunal de Apelaciones, el señor Omar Carrión Torres (en adelante, el recurrente o señor Carrión Torres), por medio de un recurso de *Revisión Judicial*, en el que nos solicita la revisión de una *Resolución* emitida el 28 de octubre de 2022, y notificada el 4 de agosto de 2023, por la Comisión de Juegos del Gobierno de Puerto Rico (en adelante, la recurrida o la Comisión de Juegos). En virtud de la referida

Número Identificador

SEN2024 _____

*Resolución,* y en lo aquí pertinente, la Comisión de Juegos dispuso que el recurrente debía esperar a una determinación de aprobación o denegación de licencia, emitida por el Director Ejecutivo de la Comisión de Juegos, para solicitar autorización como parte interventora.

Por los fundamentos que expondremos a continuación, *confirmamos* la determinación recurrida.

**I**

Los hechos que suscitaron la controversia de epígrafe son los que adelante se esbozan.

El 6 de noviembre de 2020, el señor Lucas Castro Badia (en adelante, señor Castro Badia), presentó una solicitud de licencia para la apertura de una agencia hípica #2412, por medio de la gerente del Sistema de Videojuegos Electrónicos de Camarero Race Track Inc., empresa operadora del Hipódromo Camarero (en adelante, Camarero). En razón de ello, el 2 de marzo de 2021, el señor Carrión Torres, dueño de la agencia hípica #546, dirigió una misiva a la Administración de la Industria del Deporte Hípico (AIDC), titulada *RE: Oposición a la Solicitud de Licencia de Agencia Hípica, Propiedad Colindante a la Agencia #546 del Barrio Celada de Gurabo.* Por medio de esta, el recurrente adujo que inicialmente se le había indicado que la agencia para la cual solicitaban la licencia se ubicaría dentro del garaje de gasolina, continuo a su local. No obstante, expresó que, luego se percató de que donde se pretendía abrir dicha agencia era en la misma propiedad del garaje de gasolina, pero en un local distinto. A esos efectos, esgrimió que la licencia fue solicitada para establecer una agencia hípica similar a la suya, y la cual llevaba 30 años operando. Especificó que, ambas agencias estarían a ciento cinco (105) pies de distancia. En atención a ello, el señor Carrión Torres solicitó que se denegara la licencia,

toda vez que la expedición de la misma no respondía a los mejores intereses del deporte hípico.

El 24 de junio de 2021, Camarero remitió una carta al Director Ejecutivo de la Comisión de Juegos, así como al Director del Negociado Hípico de la misma agencia, recomendando favorablemente la aprobación de la solicitud del señor Castro Badia. Posteriormente, el 7 de julio de 2021, un inspector de la Oficina de Investigación y Regulación del Negociado Hípico realizó una inspección de la agencia hípica #2412. El 14 de julio de 2021, este último rindió un informe de la investigación ante la Comisión de Juegos, indicando, a grandes rasgos, que la aprobación de la licencia afectaría grandemente los ingresos del negocio del señor Carrión Torres.

Así las cosas, el 29 de septiembre de 2021, notificada al siguiente día, el Director Ejecutivo de la Comisión de Juegos emitió una *Orden,* con el propósito de iniciar un proceso de investigación, de conformidad con la autoridad concedida en la Ley Núm. 83 de 2 de julio de 1987, 15 LPRA § 198 *et seq.*, conocida como la *Ley de la Industria y el Deporte Hípico de Puerto Rico.*[1] El Director Ejecutivo de la Comisión de Juegos designó al licenciado José R. Martínez Ramos como Juez Administrativo para que iniciara el proceso de investigación y, entre otras funciones, rindiera una resolución "conteniendo sus determinaciones de hechos y conclusiones de derecho… disponiendo de la controversia, en este caso en todo lo relacionado con la solicitud #2412 y si procede o no la misma."[2] En adición, citó a las partes al salón de vistas del Negociado Hípico, para el 21 de octubre de 2021, a los fines de que prestaran su testimonio y sometieran toda la prueba que entendieran pertinente

---

[1] Véase, Artículo 5(a)(10), 15 LPRA § 198k, de la referida Ley.
[2] Apéndice del recurso de *Revisión Judicial,* pág. 88.

para la investigación, y así determinar si procedía o no la concesión de la licencia.

Conforme surge del expediente administrativo, tras varias incidencias procesales innecesarias pormenorizar, la vista en sus méritos se celebró el 26 de abril de 2022.

Cabe destacar que, en el ínterin, específicamente el 1 de noviembre de 2021, Camarero presentó un documento ante la Comisión de Juegos, intitulado *Comparecencia de Camarero Race Track Corp.* En esencia, reiteró que endosó su aprobación de la licencia del señor Castro Badia. Añadió que, el recurrente no había fundamentado en derecho la justificación de una denegatoria. Finalmente, solicitó, entre otros, que cumpliera con los procedimientos para la determinación sobre la apertura de la nueva agencia.

Luego de escuchar los planteamientos de las partes, el 5 de julio de 2022[3], el Juez Administrativo emitió *Resolución*, denegando la solicitud de agencia hípica #2412. Según surge de la misma, el Juez Administrativo razonó que no existía un protocolo que estableciera los requisitos para la aprobación de licencias y denegación de agentes hípicos, conforme lo establece el Reglamento Núm. 8944 del 6 de abril de 2017, conocido como el Reglamento Hípico Parte General y de Licencias.

En desacuerdo, el 1 de agosto de 2022, el señor Castro Badia presentó un recurso de *Revisión Administrativa* ante la Junta de Comisionados de la Comisión de Juegos (en adelante, Junta de Comisionados). A través de esta, solicitó la revocación de la referida *Resolución*. En atención a ello, el 28 de octubre de 2022, la Junta de Comisionados desestimó el recurso instado. En su dictamen, expresó que el Juez Administrativo actuó *ultra vires*, puesto que,

---

[3] La resolución fue notificada el 11 de julio de 2022.

según se desprendía de la delegación que le fue hecha, su función se limitaba a presentar un informe con determinaciones de hechos y conclusiones de derecho. Añadió que, "la facultad adjudicativa[,] a los fines de determinar si denegaba o no la solicitud de licencia de agente hípico del señor Castro [Badía]"[4], fue retenida por el Director Ejecutivo de la Comisión de Juegos.

Por otro lado, la Junta de Comisionados concluyó que el señor Carrión Torres no tenía legitimación activa para actuar como parte interventora. En lo específico, dispuso lo siguiente:

> [E]l señor Omar Carrión venía obligado a esperar a que el Director Ejecutivo determinara si aprobaba la licencia del Sr. Castro, para entonces poder tener legitimación activa para iniciar un procedimiento adjudicativ[o] ante la Comisión de Juegos. Del mismo modo, el Sr. Omar Carrión venía obligado a esperar a que el Director Ejecutivo determinara si denegaba la licencia del Sr. Castro, en cuyo caso, de éste último iniciar un procedimiento ante la Comisión de Juegos, el Sr. Omar Carrión, podía solicitar autorización como parte interventora.[5]

En consonancia con todo lo anterior, la Junta de Comisionados devolvió la solicitud de licencia al Director Ejecutivo de la Comisión de Juegos para la continuación de los procedimientos, a los fines de determinar si concedía o denegaba la licencia solicitada.

Cabe destacar que, dicha *Resolución* fue inicialmente notificada el 31 de octubre de 2022. No obstante, conforme surge del expediente, la Comisión de Juegos remitió la notificación al representante legal del recurrente, utilizando una dirección de correo electrónico incorrecta. Ante ello, el 27 de diciembre de 2022, se envió una segunda notificación a todas las partes.

Inconforme, el señor Carrión Torres acudió por primera vez ante esta Curia, el 26 de enero de 2023, mediante recurso de

---

[4] Apéndice del recurso de *Revisión Judicial*, pág. 15.
[5] *Íd.*, pág. 16.

*Revisión Judicial*, alegando que la Comisión de Juegos había cometido dos (2) errores.

Mediante *Sentencia* emitida por este mismo panel, el 28 de abril de 2023, en el caso con identificación alfanumérica KLRA202300045, resolvimos desestimar el recurso, toda vez que, razonamos que el mismo era prematuro. En lo específico, dispusimos que, la *Resolución* recurrida no incluía las advertencias requeridas por nuestro ordenamiento jurídico en torno al derecho de revisión. A esos efectos, señalamos que no hubo una notificación adecuada, y ello nos privaba de jurisdicción en ese momento para atender el recurso. En adición, advertimos a las partes que lo resuelto no impedía su comparecencia futura, ello luego de que la Comisión de Juegos notificara adecuadamente su determinación.

Más adelante, el 4 de agosto de 2023, la *Resolución* fue nuevamente notificada, con las advertencias legales correspondientes.[6] Ante ello, el 6 de octubre de 2023, el señor Carrión Torres instó el presente recurso de *Revisión Judicial*, y nos expone los siguientes señalamientos de error:

1- Erró la Honorable Comisión de Juegos del Gobierno de Puerto Rico en coartar los derechos constitucionales de una parte indispensable en el pleito administrativo.

2- Erró la Honorable Comisión de Juegos del Gobierno de Puerto Rico en emitir una resolución que carece de planteamientos en derecho para sustentarse.

El 17 de octubre de 2023, emitimos *Resolución* interlocutoria mediante la cual, en lo pertinente, concedimos a la parte recurrida hasta el 6 de noviembre de 2023 para presentar su alegato en

---

[6] Precisa señalar que, el 30 de junio de 2023, el señor Carrión Torres presentó un *Mandamus* ante el Tribunal de Primera Instancia, Sala Superior de San Juan. Por medio del mismo, solicitó que se ordenara a la Comisión de Juegos a emitir la *Resolución* del 28 de octubre de 2022, notificada formalmente el 27 de diciembre de 2022, con todas las exigencias en ley relacionadas a la notificación adecuada. Tras varios trámites procesales, el 31 de agosto de 2023, el foro primario desestimó el caso. En esencia, toda vez que la Comisión de Juegos notificó la *Resolución* el 4 de agosto de 2023 –incluyendo las advertencias del derecho de notificación pertinentes– la controversia ante el tribunal *a quo* se tornó académica, por lo que el foro carecía de jurisdicción.

oposición. Le apercibimos que, transcurrido el término dispuesto, el recurso se entendería perfeccionado para su adjudicación final. En adición, ordenamos a la Comisión de Juegos a someter copia certificada del expediente administrativo.

En cumplimiento, el 1 de noviembre de 2023, compareció el señor Castro Badia mediante *Oposición a Recurso de Revisión Judicial*. Posteriormente, el 6 de noviembre de 2023, la Comisión de Juegos presentó su *Oposición a Recurso de Revisión*. En igual fecha, presentó *Moción en Cumplimiento de Orden*, acompañando con copia del expediente administrativo del caso NH-21-46.

Perfeccionado el recurso, y con el beneficio de la comparecencia de las partes, procedemos a disponer del mismo.

**II**

**A. *Revisión Determinaciones Administrativas***

Según es sabido, los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que, estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 87-89 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012); *Asoc. Fcias. v. Caribe Specialty et al. II*, 179 DPR 923, 940 (2010). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección, que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.* No obstante, tal norma no es

absoluta. Es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de Puerto Rico*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que **si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida**. (Énfasis suplido).[7]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*, supra, pág. 90; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, supra.

---

[7] Véase además, *Hernández Feliciano v. Mun. Quebradillas*, supra; *Super Asphalt v. AFI y otros*, supra.

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA § 9675, conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (en adelante, LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*, supra*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA § 9675. Nuestro Máximo Foro, ha expresado que, esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.*; *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otros,* supra. Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. *Rolón Martínez v. Supte. Policía*, supra; *Torres Rivera v. Policía de PR*, supra, pág. 627; Sec. 4.5 LPAU, 3 LPRA § 9675. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Rolón Martínez v. Supte. Policía*, supra, págs. 36-37; *Torres Rivera v. Policía de PR*, supra. El Tribunal Supremo ha dispuesto que, la deferencia que le deben los

tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales. *Íd.* págs. 627-628; *OEG v. Martínez Giraud*, supra.

Finalmente, nuestra más Alta Curia ha expresado que, conforme lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *Íd.*

### B. *Comisión de Juegos y Facultades del Director Ejecutivo*

La Ley Núm. 81 de 29 de julio de 2019, 15 LPRA § 981 *et seq.*, conocida como la *Ley de la Comisión de Juegos del Gobierno de Puerto Rico* (en adelante, Ley Núm. 81-2019), establece la política pública del Gobierno de Puerto Rico relacionada a las apuestas en eventos deportivos y ligas de juegos electrónicos. A través de la referida Ley, se creó la Comisión de Juegos de Puerto Rico, a los fines de regir y fiscalizar todos los asuntos de la industria de apuestas autorizadas por internet, en deportes, ligas de juegos electrónicos y, asuntos dispuestos en la *Ley sobre Juegos al Azar y Autorización de Máquinas Tragamonedas en los Casinos*[8], y en la *Ley de la Industria y el Deporte Hípico de Puerto Rico*[9]. 15 LPRA § 982a.

Así pues, la Comisión de Juegos ostenta facultad para reglamentar lo concerniente a la industria y el deporte hípico. Artículo 4(a) de la Ley Núm. 83-1987, 15 LPRA § 198e. A tenor, y en

---

[8] Ley Núm. 221 de 15 de mayo de 1948, según enmendada; 15 LPRA § 71 *et seq.*
[9] Ley Núm. 83 de 2 de julio de 1987, según enmendada; 15 LPRA § 198 *et seq.*

lo que aquí concierne, la Comisión de Juegos faculta a su director ejecutivo a, entre otras cosas, otorgar, suspender o cancelar las licencias de dueños de caballos, jinetes, entrenadores, mozos de cuadra, agentes hípicos o cualquier otro tipo de licencia o permiso relacionado con la actividad hípica. Artículo 5(a)(2) de la *Ley Núm. 83-1987*, 15 LPRA § 198k. Como corolario, el director ejecutivo podrá llevar a cabo aquellas investigaciones que entienda necesarias, para determinar si alguna persona ha violado la *Ley Núm. 83-1987*, o cualquier reglamento u orden promulgada de acuerdo con la misma. En adición, el director ejecutivo tiene facultad para delegar a un oficial examinador, para que este reciba prueba en relación a cualquier querella o asunto presentado ante sí. Dicho oficial examinador podrá "tomar juramento de los testigos que comparezcan ante él y deberá rendir un informe al Director Ejecutivo conteniendo sus determinaciones de hechos y conclusiones de derecho." Artículo 5(a)(10) de la *Ley Núm. 83-1987*, 15 LPRA § 198k.

## C. *Parte Interventora en Procedimientos Adjudicativos y en la Concesión de Licencias*

La LPAU define interventor como "aquella persona que no sea parte original en cualquier **procedimiento adjudicativo** que la agencia lleve a cabo y que haya demostrado su capacidad o interés en el procedimiento." (Énfasis nuestro). Sección 1.3(f) de la LPAU, 3 LPRA § 9603. Añade que, para que se le permita intervenir o participar a una parte que tenga un interés legítimo en un **procedimiento adjudicativo**, esta viene obligada a presentar una solicitud por escrito y debidamente fundamentada ante la agencia. Sección 3.5 de la LPAU, 3 LPRA § 9645. Dicho de otra manera, una persona interesada en intervenir en un proceso adjudicativo debe presentar una solicitud en la que claramente demuestre cómo se afectará su interés por la decisión administrativa. *Metro Senior v.*

*AFV*, 209 DPR 203 (2022); *Fund. Surfrider y otros v. A.R.Pe*, 178 DPR 563, 576 (2010); *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 193 (2009).

La agencia deberá considerar la solicitud y podrá concederla o denegarla a su discreción, tomando en consideración los siguientes factores:

(a) Que el interés del peticionario puede ser afectado adversamente por el procedimiento adjudicativo.

(b) Que no existan otros medios en derecho para que el peticionado pueda proteger adecuadamente su interés.

(c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.

(d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.

(e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.

(f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.

(g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento. *Claro TV y Junta Regl. Tel. v. One Link*, 179 DPR 177, 208 (2010); *JP, Plaza Santa Isabel v. Cordero Badillo*, supra, págs. 189-190.

El derecho de intervención únicamente existe y está disponible dentro de un procedimiento adjudicativo. *Claro TV y Junta Regl. Tel. v. One Link*, supra, pág. 209. En lo pertinente al caso de marras, el Tribunal Supremo ha dicho que el proceso inicial en el que se dilucida si se concede o no una licencia, no es de naturaleza adjudicativa. En lo específico, el Alto Foro explicó lo siguiente:

> [E]l proceso inicial de concesión de licencia o franquicia no es adjudicativo y, por lo tanto, en esa etapa es **inaplicable el derecho de intervención**. Esta determinación no se altera por el hecho de que existan leyes especiales reguladas por las agencias que permitan una mayor participación, incluso específica y definida, de personas que se opongan a la solicitud de

franquicia o permiso. Aunque tal consideración podría hacer parecer que este proceso es adjudicativo, no lo es porque no se está cuestionando la decisión de una agencia ni se está contraponiendo un derecho sobre otro. La participación de estas personas sólo es un mecanismo para obtener información que le pueda ser útil a la agencia para tomar la determinación de conceder o denegar una licencia, permiso o franquicia. Llegar a una conclusión diferente derrotaría nuestra política pública sobre las telecomunicaciones y los propósitos del Capítulo V. de la L.P.A.U. (Énfasis suplido). *Íd.*, pág. 211.

### III

En esencia, nos corresponde determinar si, la Comisión de Juegos incidió al determinar que el señor Carrión Torres no tenía legitimación activa para actuar como parte interventora, en el proceso de concesión de licencia al señor Castro Badia, para la apertura de la agencia hípica #2412. Sostiene el recurrente que, la Comisión de Juegos coartó sus derechos constitucionales como parte indispensable, y no fundamentó en derecho su determinación.

Conforme el derecho expuesto, la figura del interventor en trámites ante agencias surge únicamente cuando se está ante un **procedimiento adjudicativo**. *Claro TV y Junta Regl. Tel. v. One Link*, supra. Más específicamente, se ha resuelto que, en los trámites de concesión de licencia, el derecho de intervención no tiene lugar sino hasta que se determine si se concede o deniega la misma.[10]

Evaluada la controversia ante nuestra consideración bajo dicho precepto legal, se desprende de manifiesto que, en el presente caso aún no está operante el derecho de intervención. Veamos.

Surge del tracto reseñado que, el señor Carrión Torres presentó una carta ante la Comisión de Juegos, oponiéndose a la concesión de licencia a favor del señor Castro Badia. Posteriormente, el Director Ejecutivo de la Comisión de Juegos, bajo las facultades que le confiere la ley habilitadora, designó un Juez Administrativo, a los fines de determinar si se debía o no conceder la referida

---

[10] Véase, *Claro TV y Junta Regl. Tel. v. One Link*, supra, pág. 211.

licencia. El Juez Administrativo realizó su labor, y emitió una *Resolución*, el 5 de julio de 2022, por medio de la cual, denegó la solicitud presentada por el señor Castro Badia.

No obstante, la determinación del Juez Administrativo fue revocada por la Junta de Comisionados, bajo el fundamento de que este actuó *ultra vires*. En resumidas cuentas, la Junta de Comisionados concluyó que, quien ostentaba la facultad para determinar si se denegaba o se concedía la licencia, era el Director Ejecutivo de la Comisión de Juegos. A esos fines, la Junta de Comisionados devolvió el caso al Director Ejecutivo de la Comisión de Juegos, para que este emitiera su determinación en cuanto a la licencia.

De lo anterior, surge claramente que aún no existe una determinación final de la agencia, sobre si concede o no la licencia al señor Castro Badia. En ese sentido, queda claro que el proceso de concesión de licencia a favor del señor Castro Badia se encuentra en su etapa inicial. Es decir, lo que se ha llevado a cabo ante la Comisión de Juegos, hasta este momento, constituye la etapa preliminar del proceso, en el que la agencia pondera si concede o no la licencia solicitada.[11] Si bien es cierto que dicho proceso está íntimamente atado con el proceso adjudicativo de concesión de licencia[12], el mismo es uno evaluativo y **no constituye en manera alguna un proceso adjudicativo**. Insistimos en que, el derecho de intervención en casos como el presente, surge una vez se haya determinado si procede o no la concesión de la licencia solicitada.

Toda vez que, la Comisión de Juegos aún no ha emitido su determinación en cuanto a la referida licencia, **no cabe hablar del derecho de intervención en el presente caso**. Al momento, no existe un derecho de intervención que le permita al señor Castro

---

[11] Véase, *Claro TV y Junta Regl. Tel. v. One Link*, supra, pág. 216.
[12] Véase, *San Antonio Maritime v. P.R. Cement Co.,* 153 DPR 374, 390 (2001).

Torres presentar una solicitud para participar en el procedimiento como parte interventora. Cónsono a ello, avalamos la decisión de la Comisión de Juegos, en cuanto a que el señor Carrión Torres viene obligado a esperar que la agencia determine si aprueba o deniega la licencia del señor Castro Badia, para adquirir legitimación activa y poder solicitar autorización como parte interventora.

A tenor con todo lo anterior, razonamos que en el caso de marras no se justifica nuestra intervención. Consideramos que, la recurrida no actuó de manera arbitraria, ilegal, irrazonable o fuera de los poderes que le fueron delegados.[13] Asimismo, somos del criterio de que, el recurrente no logró rebatir la presunción de corrección que cobija la determinación recurrida. Por tal razón, la *Resolución* emitida por la Junta de Comisionados de la Comisión de Juegos merece la mayor deferencia de este Honorable Tribunal.

**IV**

Por los fundamentos expuestos, se *confirma* el dictamen recurrido.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[13] Véase *Hernández Feliciano v. Mun. Quebradillas*, supra; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra; *Torres Rivera v. Policía de PR*, supra, pág. 626; *Pérez López v. Depto. Corrección*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, supra, pág. 216.