Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| Marimar Pérez Riera<br>**Querellante-Recurrida**<br><br>Vs.<br><br>Consejo de Titulares Condominio Marymar Condado; Junta de Directores del Condominio Marymar Condado<br>**Querellados-Recurridos**<br><br>José Marcial Y Melanie Tapia, José González y Alicia Muñoz, Jacob Barlia y Victoria Bitton, Tamara Talavera, Carlos Fernández y Stephanie Valle, Juan Carlos Cols, Guadalberto Díaz, Jorge Díaz y Mónica Álvarez, Noel Berrios, Giancarlo Brito, Glorob, LLC, Alex Ruthizer y Steve Becton<br>**Interventores-Recurrentes** | TA2025AP00379 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm. C-SAN-2022-0011345<br><br>SOBRE:<br>LEY DE CONDOMINIOS |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Hernández Sánchez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 27 de octubre de 2025.

El 25 de septiembre de 2025, el Sr. José Marcial, la Sra. Melanie Tapia, el Sr. José González, la Sra. Alicia Muñoz, el Sr. Jacob Barlia, la Sra. Victoria Bitton, la Sra. Tamara Talavera, el Sr. Carlos Fernández, la Sra. Stephanie Valle, el Sr. Juan Carlos Cols, el Sr. Guadalberto Díaz, el Sr. Jorge Díaz, la Sra. Mónica Álvarez, el Sr. Noel Berrios, el Sr. Giancarlo Brito, Glorob, LLC, el Sr. Alex Ruthizer y el Sr. Steve Becton (en conjunto, los recurrentes) comparecieron ante nos mediante un *Recurso de Revisión Judicial*

[…][1] y solicitaron la revisión de una *Resolución Interlocutoria* emitida y notificada el 8 de mayo de 2025 por el Departamento de Asuntos del Consumidor (DACo). Mediante el aludido dictamen, el DACo declaró No Ha Lugar la solicitud de intervención que presentaron los recurrentes.

Por los fundamentos que expondremos a continuación, **confirmamos** el dictamen recurrido.

I.

El 18 de abril de 2022, la Sra. Marimar Pérez-Rivera (señora Pérez) presentó una *Querella* sobre Ley de Condominios y daños y perjuicios contra del Consejo de Titulares y la Junta de Directores del Condominio Marymar Condado, así como contra J.O.G. Engineering, Corp. y el Sr. José O. González García.[2] En respuesta, el 21 de octubre de 2022, el Consejo de Titulares en conjunto con la Junta de Directores presentaron su *Contestación a la Querella.*[3] Cabe señalar que, el 10 de febrero de 2025, el DACo emitió una *Resolución* mediante la cual ordenó el cierre y archivo, con perjuicio, de la *Querella*, únicamente en lo que respecta a los co-querellados, J.O.G. Engineering, Corp. y el Sr. José O. González García.[4]

Posteriormente, el 6 de marzo de 2025, los recurrentes, titulares de varios apartamentos del Condominio Marymar, presentaron una *Moción de Comparecencia y Solicitando Acceso a Expediente Electrónico.*[5] En esta, solicitaron acceso al expediente electrónico de la *Querella* de epígrafe. Indicaron que, tras la elección de la señora Pérez como presidenta de la Junta de Directores en la asamblea del 31 de enero de 2025, esta manifestó su intención de

---

[1] Cabe precisar que, a pesar de que la Secretaría de este Tribunal le asignó al presente caso el alfanumérico TA2025AP00379, el recurso procesal adecuado para atender este asunto es una revisión judicial, por lo que así lo acogeremos. Sin embargo, por razones de economía procesal, se conservará la designación alfanumérica originalmente asignada.

[2] *Véase*, Entrada Núm. 1 del apéndice del recurso, SUMAC TA.

[3] *Véase*, Entrada Núm. 3 del apéndice del recurso, SUMAC TA.

[4] *Véase*, Anejo Núm. 10 de la oposición al recurso presentada por la señora Pérez, SUMAC TA.

[5] *Véase*, Entrada Núm. 8 del apéndice del recurso, SUMAC TA.

transar la reclamación de epígrafe. Expresaron que, ante ello, varios de los titulares solicitaron ver el expediente de la controversia de epígrafe para evaluar la potencial transacción. Sin embargo, alegaron que, posteriormente ésta, en su carácter como presidente, se negó a proveerle copias del expediente a los titulares, limitando su acceso a la revisión física en las oficinas del DACo. Sostuvieron que, en consecuencia, contrataron una representación legal, quien constató que el expediente físico estaba incompleto, por lo que solicitaron que se le concediera acceso al expediente electrónico del caso para poder evaluarlo adecuadamente.

Asimismo, el 6 de marzo de 2025, los recurrentes presentaron una *Moción de Intervención*.[6] En síntesis, indicaron que, en atención a que formaban parte del Consejo de Titulares y que dicho Consejo no podía ser representado en la presente querella por la señora Pérez, quien funge como presidenta y, a la vez, es la parte querellante, solicitaron que se les permitiera intervenir en el presente procedimiento con el fin de obtener acceso al expediente del caso de marras.

Por otro lado, el 6 de marzo de 2025, los recurrentes presentaron una *Moción Solicitando Archivo de la Querella o, en la Alternativa, la Paralización de los Procedimientos y la Transferencia de la Vista del 27 de marzo de 2025*.[7] Indicaron que, conforme al Art. 48 de la Ley Núm. 129-2020, según enmendada, mejor conocida como *Ley de Condominios de Puerto Rico*, 31 LPRA sec. 1922t, el Consejo de Titulares constituía la autoridad suprema sobre la administración del inmueble sometido al régimen de propiedad horizontal y estaba integrado por todos los titulares. A su vez, citaron el Art. 54 de la referida ley, 31 LPRA sec. 1922z, que disponía que el Presidente representaba al Consejo de Titulares en juicio.

---

[6] *Véase*, Entrada Núm. 9 del apéndice del recurso, SUMAC TA.
[7] *Véase*, Entrada Núm. 10 del apéndice del recurso, SUMAC TA.

Añadieron que, según el mismo Art. 54 antes citado, la Presidenta debía comparecer en representación del Consejo de Titulares o de la Junta de Directores como parte querellada y notificar a los titulares las acciones tomadas dentro de los treinta días siguientes.

No obstante, argumentaron que, en este caso solo existía un miembro en la Junta de Directores —la Presidenta—, quien era la única que podía comparecer ante el DACo. Sostuvieron que, desde el 31 de enero de 2025, la señora Pérez se desempeñaba simultáneamente como querellante y querellada en el procedimiento de epígrafe, lo que constituía un conflicto de intereses evidente. Por este propósito, solicitaron el archivo de la *Querella*.

En la alternativa, solicitaron la paralización de los procedimientos, al entender que la situación antes descrita impedía que la señora Pérez pudiese dirigir al representante legal del Consejo de Titulares. Además, argumentaron que la paralización resultaba necesaria, toda vez que la representación legal del Consejo de Titulares requería el insumo de todos los titulares del condominio y no únicamente de la Presidenta actual o anterior durante la tramitación de la *Querella*. Indicaron que, desde el 31 de enero de 2025, el Consejo de Titulares había sido privado de ofrecerle dicho insumo a su representación legal. Debido al presunto conflicto de intereses existente, indicaron que se imposibilita la celebración de la vista argumentativa pautada para el 27 de marzo de 2025, la vista en su fondo o la continuación de los procedimientos.

En respuesta, la señora Pérez presentó una *Moción de Desestimación a Sendos Escritos por Personas Individuales*.[8] En primer lugar, en cuanto a la solicitud de acceso al expediente electrónico presentada por los recurrentes, sostuvo que un examen íntegro del *Community Letter 2025-01* demostraba que nunca se

---

[8] *Véase*, Entrada Núm. 11 del apéndice del recurso, SUMAC TA.

negó acceso al expediente a los titulares, sino todo lo contrario. Indicó que, conforme a dicho documento, la comunidad fue informada clara y expresamente sobre las alternativas disponibles para acceder a la documentación relacionada con la *Querella*. Explicó que se proporcionó un enlace de Google Drive que contenía la totalidad de la evidencia, compuesta por 1,602 páginas numeradas y 110 archivos adicionales relativos a los costos incurridos y gastos anticipados de la parte reclamante, obtenidos durante el proceso de descubrimiento de prueba. Además, indicó que se notificó que cualquier titular que deseara obtener una copia completa del expediente podía solicitarla para ser reproducida por *Double Dey*, a su costo. Adujo que, como alternativa gratuita, también se les informó que podían acudir personalmente a DACO para revisar el expediente.

Añadió que muchos de los titulares que firmaron la moción habían sido miembros de la Junta de Directores en algún momento durante los tres años que la *Querella* había estado en curso y, por tanto, tuvieron acceso directo al expediente desde el inicio. Sostuvo que, si no lo revisaron en su momento, ello no constituía una falta de acceso, sino un incumplimiento de su deber. Finalmente, señaló que, si algún titular entendiera que hubo falta de información por parte de la Junta de Directores, la vía adecuada sería presentar una Querella Expedita conforme al Reglamento del DACo Núm. 9386, lo cual no se había hecho, ya que la información había estado disponible en su totalidad.

Sobre la solicitud de intervención, alegó que los recurrentes no cumplían con los requisitos legales para intervenir, ya que no habían demostrado un interés legítimo o directo en la controversia. Señaló que la *Querella* se presentó el 18 de abril de 2022, hacía tres años, durante los cuales ya se habían tomado deposiciones, completado el descubrimiento de prueba y presentado informes

periciales. Afirmó que todos los titulares habían estado al tanto del caso, pues este había sido discutido en múltiples asambleas y comunicaciones escritas dirigidas a la comunidad.

Además, indicó que al menos cinco de los trece recurrentes fueron miembros de la Junta de Directores en algún momento durante la vigencia de la *Querella*, por lo que tuvieron acceso directo tanto al expediente como al representante legal del Consejo de Titulares. Sostuvo que la moción no demostraba que la representación actual del Consejo de Titulares fuese inadecuada ni insuficiente. Reconoció que las decisiones del Consejo de Titulares podían impactar a todos los titulares, pero aclaró que ello no les confería automáticamente el derecho a intervenir, ya que la representación del condominio recaía en el Consejo de Titulares, no en los titulares individualmente. Sostuvo que, si algún titular entendiera que una decisión era contraria a la ley, tendría otros mecanismos legales para impugnarla.

Afirmó que no se había probado que la intervención de los recurrentes fuese indispensable para proteger sus intereses, puesto que el Consejo de Titulares ya contaba con representación legal a cargo del Lcdo. Raúl Del Manzano, electo en asamblea. Argumentó que permitir la intervención abriría la puerta a que cualquier titular interfiriera en querellas contra el Consejo de Titulares, generando una desestabilización del proceso administrativo y afectando la gobernanza del condominio.

Asimismo, manifestó que los recurrentes contaban con otros mecanismos legales para proteger sus intereses y que la solicitud de intervención constituía un intento improcedente de reexaminar decisiones anteriores, ya prescritas. Añadió que la intervención no aportaba evidencia nueva ni relevante, y solo dilataría el procedimiento, ya que el caso llevaba tres años en trámite y se había completado el descubrimiento de prueba. Argumentó que los

recurrentes no representaban a ningún grupo o entidad de la comunidad y que la única entidad con legitimidad para representar al condominio era el Consejo de Titulares.

Finalmente, indicó que los recurrentes no habían demostrado poseer conocimientos técnicos, pericia o información relevante que justificara su intervención, la cual solo entorpecería el proceso. Señaló que el Lcdo. Raúl Del Manzano fue elegido abogado del Consejo en una asamblea del 1 de agosto de 2024, y que su designación fue sugerida por uno de los propios comparecientes, el expresidente, el Sr. Steve Becton. Concluyó que la moción de intervención debía ser desestimada de plano, ya que aceptarla iría en contra de la estructura legal y organizativa que regía los condominios.

Por otro lado, en cuanto a la *Moción Solicitando el Archivo de la Querella o, en la Alternativa, la Paralización de los Procedimientos y la Transferencia de la Vista del 27 de marzo de 2025*, argumentó que debía ser desestimada de plano, pues las alegaciones de los recurrentes carecían de fundamento. Indicó que estos no tenían legitimación activa para presentar mociones que buscaran paralizar el procedimiento, ya que las partes en el caso eran ella y el Consejo de Titulares, no los titulares de manera individual. Expuso que su elección como presidenta de la Junta de Directores, ocurrida el 31 de enero de 2025, fue unánime y transparente, y que ella misma expresó estar dispuesta a ceder el puesto a cualquier titular interesado, sin que nadie lo solicitara. Añadió que, de haber existido alguna objeción a su elección, debió haberse impugnado dentro del término de treinta días y no a través de una moción ulterior.

Asimismo, rechazó la alegación de que fungía como "querellante y querellada", aclarando que la parte querellada era el Consejo de Titulares y no la Junta de Directores ni su presidenta. Señaló que el DACo había resuelto reiteradamente que la Junta de

Directores no tenía personalidad jurídica y, por ende, no podía ser parte en un procedimiento administrativo. Argumentó que la Ley de Condominios no prohibía que un titular que hubiese presentado una reclamación posteriormente ocupara un cargo en la Junta de Directores, por lo que no existía conflicto de intereses. Además, explicó que, para asegurar la independencia del proceso, instruyó al Lcdo. Raúl Del Manzano —abogado del Consejo de Titulares— a manejar el caso de forma autónoma, sin intervención de la presidencia, según constaba en el *Community Letter 2025-001*.

En cuanto al señalamiento de que actualmente solo había un miembro en la Junta de Directores, aclaró que, en uso de su facultad para llenar vacantes, designó a la expresidenta Lourdes Riera como tesorera. Respecto a la alegación de que el representante legal del Consejo de Titulares no había recibido insumo de su cliente, sostuvo que esa afirmación era incorrecta, pues el Consejo de Titulares estaba debidamente representado por el Lcdo. Raúl Del Manzano, quien fue electo en asamblea del 1 de agosto de 2024. Añadió que la representante legal de los comparecientes, la Lcda. Monique Díaz Mayoral, intentó sin éxito ser electa como abogada del Consejo de Titulares en esa misma asamblea, donde incluso algunos de sus propios clientes expresaron dudas sobre su pericia en derecho de condominios.

De igual forma, rechazó la aseveración de que el Consejo de Titulares se privó de proveer insumo a su representante legal, afirmando que el Consejo de Titulares había tenido amplias oportunidades de comunicarse con su abogado, incluso durante la asamblea del 31 de enero de 2025, donde se discutió extensamente el caso. Indicó que, en dicha reunión, los titulares decidieron posponer cualquier determinación sobre su responsabilidad hasta la asamblea del 26 de marzo de 2025, con el fin de evaluar la evidencia que ya les había sido entregada. Además, alegó que ciertos

titulares no aceptaban la realidad de que el representante legal del Consejo de Titulares les informó sobre su responsabilidad en los daños reclamados y les advirtió sobre las consecuencias de prolongar el litigio temerariamente. En vista de lo anterior, solicitó que las tres mociones presentadas por los recurrentes fuesen desestimadas de plano por carecer de fundamento legal.

El 27 de marzo de 2025, el DACo celebró una vista de estado de procedimientos en la cual compareció la señora Pérez, el Consejo de Titulares y los recurrentes.[9] En lo pertinente, se le concedió al Consejo de Titulares un término para contestar la solicitud de intervención. Además, se señaló una vista en los méritos del caso para las fechas del 12,13,16 mayo, y el 2,3, 18 y 19 de junio todas del 2025.

En cumplimiento con la orden del DACo, el 11 de abril de 2025, el Consejo de Titulares en conjunto con la Junta de Directores presentó su *Moción en Oposición a Solicitud de Intervención*.[10] En esta, se opuso a la solicitud de intervención presentada por los recurrentes, por entender que no procedía como cuestión de derecho y que además sería impráctica. Sostuvo que, conforme al Art. 48 de la Ley Núm. 129-2020, *supra*, el Consejo de Titulares constituía la autoridad suprema sobre la administración del condominio, tenía personalidad jurídica propia y sus decisiones eran de cumplimiento obligatorio para todos los titulares. Explicó que, aunque los propietarios poseían una participación alícuota sobre el inmueble, el Consejo de Titulares tenía una existencia jurídica independiente y debía comparecer por sí mismo ante los foros judiciales o administrativos para defender sus intereses, que no necesariamente coincidían con los de sus titulares individuales.

---

[9] *Véase*, Entrada Núm. 12 del apéndice del recurso, SUMAC TA.
[10] *Véase*, Entrada Núm. 14 del apéndice del recurso, SUMAC TA.

Añadió que la Ley de Condominios disponía que, cuando el Consejo o la Junta de Directores compareciera como parte demandada o querellada, el presidente o presidenta podía seleccionar la representación legal que estimara conveniente, previa consulta con la Junta de Directores. En vista de ello, indicó que todos los titulares estaban representados a través del abogado escogido por el cuerpo directivo, lo que hacía improcedente que un grupo de titulares compareciera con su propio abogado en el mismo pleito.

Expresó que el nombramiento de su representante legal fue llevado a una asamblea y avalado por los titulares, cumpliendo así con los requisitos legales y con el consenso de la comunidad. Afirmó que permitir que distintos titulares comparecieran de forma individual con representación legal separada sería contrario a la ley e impráctico, ya que, en condominios con decenas o cientos de apartamentos, ello resultaría insostenible.

Por último, argumentó que el hecho de que la señora Pérez hubiese sido electa presidenta de la Junta de Directores de forma unánime no justificaba la intervención solicitada, pues la ley contemplaba mecanismos específicos para atender controversias internas del régimen. En consecuencia, solicitó que la petición de intervención presentada por los trece titulares fuese declarada No Ha Lugar.

Ese mismo día, a saber, el 11 de abril de 2025, los recurrentes presentaron una *Moción Suplementando Solicitud de Intervención* con el único fin de suplementar su solicitud original con fuentes en Ley y de lo resuelto en la jurisprudencia relacionada a la intervención de los titulares en las querellas ante el DACo contra el Consejo de Titulares.[11]

---

[11] *Véase*, Entrada Núm. 15 del apéndice del recurso, SUMAC TA.

Posteriormente, el 23 de abril de 2025, el Consejo de Titulares celebró una asamblea extraordinaria en el Condominio Marymar Condado, en la cual se llevó a cabo un proceso de nominación y elección para ocupar el cargo de presidenta.[12] De la Minuta de dicha asamblea se desprende que, durante el transcurso de esta, la señora Pérez preguntó en al menos diez ocasiones si algún titular deseaba asumir la presidencia, sin que nadie manifestara interés. La señora Pérez se dirigió directamente a varios titulares —entre ellos, el Sr. Jorge Díaz, la Sra. Tamara Talavera, el Sr. Raphael Ramseyer, el Sr. Jack Barlia, el Sr. Guadalberto y el Sr. Juan Masini—, quienes expresamente declinaron ser considerados. Ante la falta de voluntarios, la señora Pérez se auto-nominó, al igual que la Sra. Lourdes Riera.

En ese contexto, la señora Pérez cuestionó cómo podían convocar una reunión para su destitución sin tener a nadie dispuesto a asumir el cargo, señalando la contradicción de criticar sin participar. El señor Jorge Díaz respondió que la reunión se había convocado precisamente para que no hubiera presidenta, pues deseaban que se designara un síndico, a lo que la señora Pérez replicó que ello no era necesario, dado que había dos miembros del Consejo de Titulares dispuestos a ocupar la posición. Conforme se desprende de la minuta, el proceso culminó con la celebración de una votación, mediante la cual resultó electa la Sra. Lourdes Riera como nueva presidenta.

Atendidos los planteamientos de todas las partes y considerando el cambio de presidencia ocurrido en la asamblea extraordinaria del 23 de abril de 2025, el DACo emitió y notificó una *Resolución* el 8 de mayo de 2025.[13] En esta determinó que el Consejo

---

[12] *Véase*, Anejo Núm. 9 de la oposición al recurso presentada por la señora Pérez, SUMAC TA.
[13] *Véase*, Entrada Núm. 20 del apéndice del recurso, SUMAC TA.

de Titulares del Condominio Marymar Condado, en el ejercicio de su prerrogativa legal, eligió en una Asamblea Extraordinaria debidamente constituida el 23 de abril de 2025 a una nueva presidenta de la Junta de Directores, por lo que el planteamiento de los recurrentes sobre un alegado conflicto de interés de la señora Pérez se tornó académico. Además, el DACo estableció que el Consejo de Titulares era la autoridad suprema con personalidad jurídica propia, separada de sus miembros, y era quien debía comparecer ante los foros judiciales y cuasijudiciales para defender sus intereses. En consecuencia, resolvió que los recurrentes carecían de legitimación activa para intervenir en el caso. Por ello, declaró No Ha Lugar la solicitud de intervención presentada por dichos titulares.

En desacuerdo con esta determinación, el 28 de mayo de 2025, los recurrentes presentaron una *Moción Solicitando Reconsideración de Resolución del 8 de mayo de 2025, e Informando sobre defecto en la Notificación.*[14] En esta, informaron que la *Resolución Interlocutoria* del DACo del 8 de mayo de 2025, mediante la cual se denegó su solicitud de intervención, fue certificada como depositada en el correo el 12 de mayo de 2025, conforme al matasello del sobre. Señalaron que, según el Tribunal Supremo, cuando la fecha de depósito certificada era incorrecta, la notificación era defectuosa y no comenzaba el término para apelar. Por ello, solicitaron que la Resolución fuese reconsiderada o, en su defecto, que se notificara nuevamente para subsanar el defecto.

Asimismo, alegaron que no fueron notificados de la *Moción Informativa Sobre Renuncia de Abogado sin Necesidad de Alterar Calendario*, documento que fue parte del razonamiento para denegar su solicitud de intervención y que solo pudieron revisar después de

---

[14] *Véase*, Entrada Núm. 21 del apéndice del recurso, SUMAC TA.

emitida la Resolución, ya que no se les había proporcionado acceso al expediente electrónico de la querella C-SAN-2022-0011345. Señalaron que dicha moción incluía una minuta redactada por la señora Pérez que no había sido aprobada ni consentida por el Consejo de Titulares y que no reflejaba lo ocurrido en la asamblea del 23 de abril de 2025.

Además, indicaron que no habían recibido todos los documentos del expediente, incluyendo la contestación de la señora Pérez al descubrimiento de prueba ni transcripciones de deposiciones. Por estas razones, le solicitaron al DACo que reconsiderara y dejara sin efecto la *Resolución Interlocutoria* del 8 de mayo de 2025. En la alternativa, solicitaron que se notificara nuevamente la Resolución para subsanar el defecto de notificación, que se regrabasen las vistas celebradas en la Querella y que se les otorgara acceso al expediente electrónico del DACo, a fin de poder preparar el apéndice del recurso de revisión judicial.

El 5 de junio de 2025, el DACo emitió una *Orden sobre Reconsideración* mediante la cual acogió la solicitud de reconsideración y le ordenó a la señora Pérez a presentar su oposición a dicha moción en o antes del 13 de junio de 2025.[15] En cumplimiento con esta orden, el 13 de junio de 2025, la señora Pérez presentó su respuesta a la solicitud de reconsideración.[16] En esta, le solicitó al DACo que estableciera expresamente que los solicitantes de intervención no cumplieron con los factores exigidos por la Sección 3.5 de la Ley Núm. 38-2017, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9645 (LPAUG). En primer lugar, sostuvo que los interventores no demostraron que su interés pudiese verse afectado adversamente, ya que no existía derecho

---

[15] *Véase*, Entrada Núm. 22 del apéndice del recurso, SUMAC TA.
[16] *Véase*, Entrada Núm. 23 del apéndice del recurso, SUMAC TA.

propietario en riesgo. Puntualizó que su único alegado interés era evitar una posible derrama futura, lo que no constituía un interés jurídico directo ni suficiente para intervenir.

En cuanto al criterio de la inexistencia de otros medios en derecho para proteger su interés, argumentó que tampoco se cumplía, pues los recurrentes habían participado activamente en las asambleas del condominio —incluyendo las de 26 de marzo, 16 de abril y 23 de abril de 2025— donde presentaron mociones y ejercieron su voz y voto sobre asuntos directamente relacionados con el caso. Expresó que esto demostraba que contaban con medios adecuados para expresar y proteger sus posturas sin necesidad de intervenir en el procedimiento ante el DACo.

Asimismo, sostuvo que el interés de los comparecientes ya estaba representado adecuadamente por el abogado del Consejo de Titulares, quien fue elegido unánimemente en asamblea, incluso con el voto de los propios recurrentes. También señaló que los recurrentes no aportarían prueba ni información nueva, y que en realidad habían tenido acceso al expediente del caso, a través del propio DACo, enlaces compartidos por la Junta de Directores y los archivos de la parte querellada.

Añadió que permitir la intervención de los recurrentes únicamente extendería innecesariamente un procedimiento que llevaba más de tres años, durante los cuales los propios recurrentes, cuando formaban parte de la Junta de Directores, incurrieron en tácticas dilatorias que afectaron la economía procesal. Además, indicó que los recurrentes no representaban a ninguna entidad formal y que no habían ofrecido conocimientos técnicos o especializados que pudiesen contribuir al expediente. Expresó que, por el contrario, una de las comparecientes, la Sra. Tamara Talavera, figuraba como testigo en el caso, por lo que permitirle

intervenir sería improcedente y atentaría contra la objetividad del proceso administrativo.

Finalmente, solicitó que todos estos factores fuesen analizados y discutidos expresamente en la resolución sobre la moción de reconsideración, de modo que, en caso de que los recurrentes presentaran una revisión judicial, el Tribunal de Apelaciones pudiese constatar que el DACo evaluó conforme a derecho los criterios reglamentarios aplicables.

Transcurrido el término sin que el DACo atendiera la solicitud de reconsideración, el 25 de septiembre de 2025, los recurrentes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> **Erró DACo, en denegar la Solicitud de Intervención así coartando el debido proceso de ley de los Interventores.**
>
> **Erró DACo, en determinar que celebrará la vista administrativa final en violación al debido proceso de los Interventores, de la Junta de Directores del Condominio Marymar Condado y del Consejo de Titulares del Condominio Marymar Condado, lo cual es una actuación arbitraria, descuidada y caprichosa.**
>
> **Erró DACo, en no corregir los defectos de notificación y no atender la falta de representación legal de la Junta de Directores que le fue notificado a DACo, lo cual es una actuación arbitraria, descuidada y caprichosa y una violación de violación al debido proceso de ley.**

Cabe precisar que, junto al recurso de epígrafe, los recurrentes presentaron una solicitud de auxilio de jurisdicción solicitando la paralización de los procedimientos ante el DACo hasta tanto resolviéramos el asunto ante nuestra consideración. Indicaron que, si no paralizábamos los procedimientos, el recurso de epígrafe se tornaría académico ya que la vista administrativa final se estaría celebrando los días 29 y 30 de septiembre de 2025, y los días 1, 2, 3, 6, 7, 8, 9 y 10 de octubre de 2025. Sin embargo, el 26 de septiembre de 2025, los recurrentes presentaron una moción

informándonos que el DACo, *motu proprio,* había paralizado los procedimientos por lo que la solicitud de auxilio de jurisdicción se tornó académica.

Así las cosas, el 29 de septiembre de 2025, emitimos una *Resolución* concediéndole a la parte recurrida hasta el 15 de octubre de 2025 para presentar su postura en cuanto al recurso. Oportunamente, la señora Pérez presentó su *Oposición a Recurso de Revisión Judicial de la Querellante-Recurrida.* Por su parte, el Consejo de Titulares Condominio Marymar Condado presentó su *Oposición a Recurso de Revisión Judicial de Parte Querellada-Recurrida.* Ambas partes negaron que el DACo cometiera los errores que los recurrentes le imputaron. Con el beneficio de la comparecencia de todas las partes, procedemos a atender el asunto ante nos. *Veamos.*

II.

**-A-**

La doctrina de revisión judicial nos encomienda "examinar si las decisiones de las agencias administrativas fueron hechas dentro de los poderes delegados y son compatibles con la política pública que las origina". *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018). Al efectuar tal encomienda, debemos "otorgar amplia deferencia a las decisiones de las agencias administrativas". *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025).

La normativa jurisprudencial ha reiterado que existe en el derecho puertorriqueño una presunción de legalidad y corrección a favor de los procedimientos y decisiones realizadas por las agencias administrativas. *Rolón Martínez v. Supte. Policía, supra,* pág. 35. Lo anterior responde a la experiencia y pericia que se presume tienen dichos organismos para atender y resolver los asuntos que le han sido delegados. *Vázquez v. Consejo de Titulares,* supra.

Así, el estado de derecho vigente nos impone otorgarle deferencia a la agencia administrativa, siempre que la parte que la impugne no demuestre evidencia suficiente que rebata la presunción de legalidad y corrección. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025). Por lo tanto, al realizar nuestra función revisora debemos enfocarnos en determinar si la agencia administrativa: (1) erró en aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente; y (3) si lesionó derechos constitucionales fundamentales. *Torres Rivera v. Policía de PR*, 196 DPR 606, 627-628 (2016).

De este modo, si al realizar nuestra función revisora no nos encontramos ante alguna de las situaciones previamente mencionadas, tenemos el deber de validar la determinación realizada por la agencia administrativa. Íd. Ello, aun cuando exista más de una interpretación posible en cuanto a los hechos. Íd., pág. 627. Ahora bien, es preciso recordar que las conclusiones de derecho, por el contrario, serán revisables en todos sus aspectos. Sección 4.5 de la LPAUG, 3 LPRA sec. 9675.

**-B-**

Según el tratadista puertorriqueño, el profesor Demetrio Fernández Quiñones, "aquellas personas afectadas por el proceso de adjudicación y que no han sido designadas como partes solicitan a menudo participar en la audiencia y en el procedimiento". D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013, pág. 178. En relación con ello, "la intervención es uno de los mecanismos que viabiliza la incorporación de terceros en un procedimiento adjudicativo". *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370, 380 (2024).

Por su parte, la Sección 1.3 de la LPAUG, 3 LPRA sec. 9603(f), define el término "interventor" como "aquella persona que no sea

parte original en cualquier procedimiento adjudicativo que la agencia lleve a cabo y que haya demostrado su capacidad o interés en el procedimiento". En armonía con dicha disposición, la Sección 3.5 de la LPAUG, *supra*, regula el trámite y los requisitos aplicables a las solicitudes de intervención en los procedimientos adjudicativos y establece lo siguiente:

> Cualquier persona que tenga un interés legítimo en un procedimiento adjudicativo ante una agencia podrá someter una solicitud por escrito y debidamente fundamentada para que se le permita intervenir o participar en dicho procedimiento. La agencia podrá conceder o denegar la solicitud, a su discreción, tomando en consideración entre otros los siguientes factores:
>
> a) Que el interés del peticionario pueda ser afectado adversamente por el procedimiento adjudicativo.
>
> b) Que no existan otros medios en derecho para que el peticionado pueda proteger adecuadamente su interés.
>
> c) Que el interés del peticionario ya esté representado adecuadamente por las partes en el procedimiento.
>
> d) Que la participación del peticionario pueda ayudar razonablemente a preparar un expediente más completo del procedimiento.
>
> e) Que la participación del peticionario pueda extender o dilatar excesivamente el procedimiento.
>
> f) Que el peticionario represente o sea portavoz de otros grupos o entidades de la comunidad.
>
> g) Que el peticionario pueda aportar información, pericia, conocimientos especializados o asesoramiento técnico que no estaría disponible de otro modo en el procedimiento.
>
> La agencia deberá aplicar los criterios que anteceden de manera liberal y podrá requerir que se le someta evidencia adicional para poder emitir la determinación correspondiente con respecto a la solicitud de intervención.

Una vez se concede la solicitud de intervención, la persona interventora adquiere la condición de parte dentro del procedimiento administrativo. *Simpson Passalacqua v. Quirós, Betances*, supra, pág. 381. De acuerdo con la propia Ley, se considera "parte" a "toda persona o agencia autorizada por ley a quien se dirija

específicamente la acción de una agencia o que sea parte en dicha acción, o que se le permita intervenir o participar en la misma [...]". Sec. 1.3(k) de la LPAUG, *supra*.

En cuanto a la naturaleza de la decisión administrativa que deniega una solicitud de intervención, el Tribunal Supremo ha expresado que se trata de una cuestión de derecho plenamente revisable por los tribunales. *Simpson Passalacqua v. Quirós, Betances*, supra, pág. 382-383. En la misma línea, se ha señalado que "se trata de una interpretación estatutaria que no incide en la pericia administrativa". (Énfasis suprimido) *San Antonio Maritime v. P. R. Cement Co.*, 153 DPR 374, 397 (2001).

Sobre este particular, el profesor Demetrio Fernández Quiñones observa que, si bien la agencia se encuentra en una posición privilegiada para determinar si procede o no la intervención —dado su conocimiento sobre la naturaleza del caso—, los tribunales no deben otorgarle deferencia absoluta a dicha determinación. Señala que corresponde examinar si la participación del interventor beneficia el proceso y si la negativa pudiese lesionar algún interés legítimo del solicitante. Así, tanto en sede administrativa como judicial, el análisis debe centrarse en determinar si existe un interés adverso y si el procedimiento podría afectar ese interés sin la participación del interventor. Fernández Quiñones, *op. cit.*, pág. 182.

-C-

La Ley Núm. 104 de 25 de junio de 1958, según enmendada, mejor conocida como *Ley de Condominios*, 31 LPRA sec. 1291 *et seq.* preceptuaba todo lo relativo al régimen de propiedad horizontal. Sin embargo, esta fue derogada por la Ley Núm. 129-2020, *supra*, aplicable al presente caso. Dicha Ley se creó con el fin de establecer un régimen jurídico atemperado a los cambios sociológicos que ha

experimentado nuestro país y para facilitar la vida en convivencia. Exposición de Motivos, Ley Núm. 129-2020, *supra*.

En lo pertinente al caso ante nos, el Art. 48 de la referida ley, *supra*, define el Consejo de Titulares como sigue:

> El Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal. Estará integrado por todos los titulares. Sus resoluciones y acuerdos, adoptados en asambleas debidamente convocadas y constituidas, serán de ineludible cumplimiento por todos y cada uno de los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio.
>
> **El Consejo de Titulares tendrá personalidad jurídica propia y de sus obligaciones frente a terceros,** responderán los titulares de forma subsidiaria y sólo con su apartamento. (Énfasis suplido)
>
> […].

### -D-

Una controversia no es justiciable, en lo pertinente, cuando una de las partes carece de legitimación activa, o cuando hechos posteriores al comienzo del pleito han tornado la controversia en académica. *Super Asphalt v. AFI y otro,* 206 DPR 803, 815 (2021). La academicidad se refiere a las situaciones en que, "se trata de obtener un fallo sobre una controversia disfrazada, que en realidad no existe, o una determinación de un derecho antes de que éste haya sido reclamado o una sentencia sobre un asunto, que, al dictarse, por alguna razón no podrá tener efectos prácticos sobre una controversia existente". Íd., pág. 816.  El objetivo de la doctrina de academicidad es: (1) evitar el uso innecesario de los recursos judiciales y (2) evitar precedentes innecesarios. Íd, págs. 815-816. Al examinar si un caso es académico, se debe evaluar los eventos anteriores, próximos y futuros, para determinar si la controversia entre las partes sigue viva y subsiste con el tiempo. Íd., pág. 816. De no ser así, el foro adjudicador está impedido de intervenir. Íd.

Por otro lado, la legitimación activa se refiere a "la capacidad que se le requiere a la parte promovente de una acción para

comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante". *Ramos, Méndez v. García García*, 203 DPR 379, 394 (2019). La legitimación activa tiene como propósito demostrar al foro adjudicador que el interés del demandante en el pleito es de tal índole que, con toda probabilidad, proseguirá su causa de acción de manera vigorosa. Íd.

Para demostrar la existencia de legitimación activa, el promovente tiene que establecer que: (1) ha sufrido un daño claro y palpable; (2) el referido daño es real, inmediato y preciso, no abstracto ni hipotético; (3) existe una conexión entre el daño sufrido y la causa de acción ejercitada; y (4) la causa de acción surge al palio de la Constitución o de una ley. Íd., págs. 394-395.

III.

En su recurso, los recurrentes impugnaron una *Resolución Interlocutoria* que el DACo emitió y notificó el 8 de mayo de 2025 denegando su solicitud de intervención. Particularmente, en su primer señalamiento de error argumentaron que el DACo erró al denegar su solicitud de intervención, coartando así su derecho al debido proceso de ley. En su segundo señalamiento de error, alegaron que el DACo incurrió en error al determinar celebrar la vista administrativa final sin incluirlos como parte del proceso. Indicaron que dicha determinación constituía una actuación arbitraria, descuidada y caprichosa por parte de la agencia. Por último, en su tercer señalamiento de error, sostuvieron que el DACo no corrigió los supuestos defectos en la notificación de la *Resolución Interlocutoria* ni atendió la alegada falta de representación legal de la Junta de Directores, lo que también consideraban una actuación arbitraria, descuidada y contraria al debido proceso de ley.

En cuanto al primer señalamiento de error, no les asiste la razón a los recurrentes al alegar que el DACo erró al denegar la

solicitud de intervención. Tal como se desprende del expediente administrativo, el fundamento de la solicitud se tornó académico al haberse elegido una nueva presidenta del Consejo de Titulares durante la asamblea extraordinaria del 23 de abril de 2025. Conforme a la jurisprudencia reiterada del Tribunal Supremo, una controversia se torna académica cuando hechos posteriores a la radicación del caso eliminan la existencia de una disputa viva entre las partes o cuando el remedio solicitado pierde eficacia práctica. *Super Asphalt v. AFI y otro,* supra, pág. 816. En tales circunstancias, la agencia carece de jurisdicción para continuar interviniendo en el asunto. Íd. Dado que el cambio de presidencia que motivó la solicitud de intervención fue atendido mediante la elección de una nueva presidenta, el DACo actuó correctamente al determinar que el asunto carecía de objeto práctico y, por tanto, la intervención era improcedente.

Aun si se entendiera que la controversia no era académica, procede señalar que el Consejo de Titulares del Condominio Marymar Condado es el ente que representa colectivamente a los titulares y posee personalidad jurídica propia, conforme dispone el Art. 48 de la Ley Núm. 129-2020, *supra.* Dicha disposición establece que el Consejo de Titulares constituye la autoridad suprema sobre la administración del inmueble y que sus resoluciones, debidamente adoptadas, son de cumplimiento obligatorio para todos los titulares. En consecuencia, los intereses de los recurrentes ya se encontraban adecuadamente representados por el Consejo de Titulares, lo que hacía innecesaria e improcedente su comparecencia individual como parte del procedimiento administrativo.

De igual forma, los recurrentes carecían de legitimación activa para promover su solicitud de intervención. Para que exista legitimación, los recurrentes debían demostrar que (1) sufrieron un daño claro y palpable; (2) dicho daño era real, inmediato y preciso,

no abstracto ni hipotético; (3) existía una conexión entre el daño alegado y la causa de acción ejercitada; y (4) que esta surgía al amparo de una disposición constitucional o legal. *Ramos, Méndez v. García García*, supra, págs. 394-395. Los recurrentes no cumplieron con estos requisitos, pues no demostraron la existencia de un perjuicio concreto o inmediato que afectara su derecho propietario o su participación como titulares.

Asimismo, tampoco satisficieron los criterios que dispone la Sección 3.5 de la LPAUG, *supra*, la cual autoriza la intervención únicamente cuando el peticionario demuestra un interés legítimo que pueda verse afectado adversamente por el procedimiento, que dicho interés no esté ya representado, y que su participación contribuya al desarrollo de un expediente más completo sin dilatar indebidamente los procedimientos. En el caso de autos, los recurrentes se limitaron a alegar que debían intervenir porque la señora Pérez, entonces presidenta del Consejo de Titulares, figuraba como querellante y querellada en el procedimiento administrativo, lo que, a su juicio, creaba un conflicto de intereses. Sin embargo, ese planteamiento resultó académico a raíz de la elección de una nueva presidenta del Consejo de Titulares, lo cual disipó cualquier controversia sobre la representación del Consejo de Titulares. En ausencia de un interés adverso real, de daño concreto, o de una aportación sustantiva al procedimiento, la agencia actuó correctamente al denegar la intervención.

Por lo tanto, el DACo evaluó razonablemente los criterios estatutarios de la Sección 3.5 de la LPAUG, *supra*, y concluyó que los intereses de los recurrentes estaban adecuadamente representados por el Consejo de Titulares y que no existía legitimación activa ni fundamento jurídico adicional para permitir su intervención. Su determinación fue conforme a derecho y no

constituye un ejercicio arbitrario de su autoridad. En consecuencia, el primer señalamiento de error no se cometió.

En cuanto al segundo señalamiento de error, tampoco tiene mérito la alegación de que el DACo violó el debido proceso de los recurrentes al determinar la continuación de la vista administrativa final sin incluirlos. Una vez se deniega la solicitud de intervención, el solicitante carece de la condición de parte dentro del procedimiento adjudicativo, por lo que no goza de los derechos procesales inherentes a las partes, tales como la notificación o participación en las vistas. El derecho al debido proceso de ley en el ámbito administrativo no se activa automáticamente, sino únicamente cuando la persona demuestra un interés propietario o legítimo que pueda verse afectado adversamente por la actuación de la agencia. En este caso, los recurrentes no demostraron un interés distinto al representado por el Consejo de Titulares, ni un daño claro, palpable e inmediato que justificara su participación. El DACo, por tanto, actuó correctamente al continuar el trámite de la querella con las partes originales. De este modo, el segundo señalamiento de error no se cometió.

Finalmente, en cuanto al tercer señalamiento de error, relacionado con los alegados defectos de notificación y la supuesta falta de representación legal de la Junta de Directores, el mismo carece de mérito. Los recurrentes sostienen que el matasellos de la notificación de la *Resolución Interlocutoria* del 8 de mayo de 2025 refleja una fecha distinta a la de su emisión, lo que a su entender constituye un defecto de notificación. Sin embargo, aun aceptando las incongruencias alegadas, lo cierto e incontrovertible es que los recurrentes recibieron oportunamente dicha *Resolución Interlocutoria*, presentaron su solicitud de reconsideración dentro del término dispuesto en ley, y esta fue acogida por el DACo. Ello les

aseguró plenamente la oportunidad de ser oídos y neutralizó cualquier alegado defecto técnico.

Por otro lado, la alegada falta de representación legal de la Junta de Directores tampoco constituye fundamento para anular el procedimiento ni para ordenar una nueva notificación. En el régimen de propiedad horizontal, el Consejo de Titulares —y no la Junta de Directores— es el sujeto con personalidad jurídica propia y capacidad procesal, conforme al Art. 48 de la Ley 129-2020, *supra*, que lo reconoce como la autoridad suprema del condominio y la persona jurídica responsable ante terceros. La Junta de Directores es meramente su órgano ejecutivo, carente de personalidad jurídica independiente, por lo que no requiere una notificación separada. En consecuencia, no se configuró defecto de notificación ni violación alguna al debido proceso de ley. Por tanto, el tercer señalamiento de error no se cometió.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen recurrido.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones